1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11  ADOBE LUMBER, INC., a
    California corporation,
12                                    CASE NO. CIV. S-05-1510 WBS PAN

            Plaintiff,
13
                                      MEMORANDUM AND ORDER RE:
14       v.                           MOTION TO DISMISS

15
    F. WARREN HELLMAN and WELLS
16  FARGO BANK, N.A., as Trustees
    of Trust A created by the
17  Estate of Marco Hellman, F.
    WARREN HELLMAN as Trustee of
18  Trust B created by the Estate
    of Marco Hellman, THE ESTATE
19  OF MARCO HELLMAN, deceased,
    WOODLAND SHOPPING CENTER, a
20  limited partnership, JOSEPH
    MONTALVO, HAROLD TAECKER,
21  GERALDINE TAECKER, HOYT
    CORPORATION, a Massachusetts
22  corporation; PPG INDUSTRIES,
    INC., a Pennsylvania
23  corporation, OCCIDENTAL
    CHEMICAL CORPORATION, a New
24  York corporation, and CITY OF
    WOODLAND,
25
            Defendants.
26
                            ----oo0oo----
27  ///

28  ///

                                1

1    Based on contamination discovered on its commercial
2  property, plaintiff Adobe Lumber, Inc. filed suit against
3  defendants, alleging violations of the Resource Conservation and
4  Recovery Act, 42 U.S.C. §§ 6901-6992k ("RCRA"), the Comprehensive
5  Environmental Response, Compensation and Liability Act of 1980,
6  42 U.S.C. §§ 9601-9675 ("CERCLA"), and California state law.
7  Defendants, in various groupings, move to dismiss the complaint
8  for failure to state a claim pursuant to Federal Rule of Civil
9  Procedure 12(b)(6).

10  I.   Factual and Procedural Background

11    Plaintiff purchased the Woodland Shopping Center ("the
12  Center") located at 120 Main St., Woodland, Ca, in 1998. (First
13  Am. Compl. ¶¶ 3, 22.)  At that time, defendants Harold and
14  Geraldine Taecker operated a dry cleaning business in Suite K, a
15  location they began leasing for that purpose in 1974.  (Id. ¶¶ 4,
16  19.)  Plaintiff continued to lease this space to the Taeckers
17  through October 2001.  (Id. ¶ 22.)

18    From 1974 until plaintiff's purchase in 1998, various
19  parties, including the trustees of the trusts created by the
20  Estate of Marco Hellman, the estate itself, the Woodland Shopping
21  Center ("WSC") partnership, and Joseph Montalvo, all named
22  defendants in this action, had ownership interests in the Center.
23  (Id. ¶¶ 5-9, 22.)  Defendant Hoyt Corporation manufactured the
24  equipment used in the dry cleaning business and defendants PPG
25  Industries and Occidental Chemical Corporation allegedly
26  manufactured the solvent perchlorprpethylene ("PCE") used in
27  Hoyt's machines.  (Id. ¶¶ 10-12.)  Based on these relationships
28  with the Taeckers' dry cleaning business, plaintiff seeks to hold

2

these defendants liable for the environmental damage described
infra.

Around August 2001, plaintiff conducted a "limited
surface investigation . . . to assess whether activities from the
Taeckers' dry cleaning operation had impacted subsurface soil
and/or groundwater beneath the Site." (Id. ¶ 35.)  The
investigation revealed the presence of contamination, which
plaintiff reported to the California Regional Water Quality
Control Board.  Both plaintiff and the Regional Board
subsequently demanded that the Taeckers begin to take steps to
remediate the contamination, but the Taeckers failed to respond
to these requests. (Id. ¶¶ 36-38.)  Plaintiff thereafter filed
suit against the Taeckers on January 22, 2002, "seeking to
recover costs incurred in response to the contamination . . .
under both section 107(a) and section 113(f)(1) of CERCLA as well
as declaratory relief as to liability for future cleanup costs
pursuant to section 113[(g)](2) of CERCLA."  (Pl.'s Opp'n to Def.
Owners' Mot. to Dismiss 4.)

In the course of the 2002 litigation, plaintiffs
discovered that the Taeckers' business used PCE, a substance
hazardous to human health but commonly used as a dry cleaning
solvent. (First Am. Compl. ¶¶ 23, 26(a)-(b).)  Significantly,
plaintiffs learned that "several sudden and accidental discharges
of PCE to the environment occurred" "during the course of the
Taeckers' dry cleaning operations . . . ." (Id. ¶ 30.)
Plaintiffs also learned, in 2004, that the design of Hoyt's
machinery and instructions from both Hoyt and the chemical
manufacturers led to intentional discharges of PCE into the

3

1   ground and public sewers.  (<u>Id.</u> ¶ 29.)

2          The previous action against the Taeckers spawned a
3   flurry of cross and third party complaints involving many of the
4   defendants in the instant case.  (Pl.'s Opp'n to Def. Owners'
5   Mot. to Dismiss 4.)  Eventually, the parties not dismissed by
6   Judge Burrell stipulated to dismissing their claims against each
7   other without prejudice and the court closed the case pursuant to
8   Federal Rule of Civil Procedure 41(a).  <u>Adobe Lumber Inc v.</u>
9   <u>Taecker</u>, No. CIV-S-02-186 (E.D. Cal. Aug. 1, 2005).  Prior to
10  that order, however, plaintiff filed the instant motion on July
11  27, 2005, reinstating some of the claims from the earlier action.

12          In this current round of litigation, plaintiff seeks a
13  clean up order against the Taeckers under RCRA, 42 U.S.C. §
14  6927(a) (First Claim), contribution under CERCLA section 107(a)
15  against all defendants (Second Claim), declaratory relief against
16  all defendants under CERCLA section 113(g)(2) (Third Claim),
17  contribution and declaratory relief against all defendants under
18  California Hazardous Substances Account Act ("HSAA"), Cal. Health
19  & Safety Code §§ 25300-25395, (Fourth & Fifth Claims), damages
20  and injunctive relief for continuing public and private nuisance
21  and for trespass against all defendants except the city (Sixth,
22  Seventh, & Eighth Claims), and strict product liability,
23  negligence, and negligence per se against the manufacturer
24  defendants (Ninth, Tenth, & Eleventh Claims).  (First Am. Compl.;
25  Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 5-6.)  On October 24,
26  2005, the trustees, the WSC partnership, and Montalvo filed a
27  Rule 12(b)(6) motion to dismiss, which defendants City of
28  Woodward, Hoyt, Occidental, and PPG all join.  Occidental and PPG

1   together and Hoyt individually also filed separate motions to

2   dismiss on additional grounds.  These motions to dismiss are now

3   all before the court.

4   II.  Discussion

5        A.   Legal Standard

6             On a motion to dismiss, the court must accept the

7   allegations in the complaint as true and draw all reasonable

8   inferences in favor of the pleader.  Scheuer v. Rhodes, 416 U.S.

9   232, 236 (1974); Cruz v. Beto, 405 U.S. 319 (1972).  The court

10  may not dismiss for failure to state a claim unless it appears

11  beyond a doubt that the pleader can prove no set of facts in

12  support of the claim which would entitle him or her to relief.

13  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In other

14  words, dismissal is appropriate where the pleader fails to allege

15  facts that support a cognizable legal theory.  Balistreri v.

16  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

17            In general, the court may not consider material other

18  than the facts alleged in the complaint when deciding a motion to

19  dismiss.  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996)

20  ("A motion to dismiss . . . must be treated as a motion for

21  summary judgment . . . if either party . . . submits materials

22  outside the pleadings in support or opposition to the motion, and

23  if the district court relies on those materials.").  However,

24  reliance on matters of public record "does not convert a Rule

25  12(b)(6) motion to one for summary judgment."  Mack v. S. Bay

26  Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on

27  other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501

28  U.S. 104 (1991).

1    B.   <u>Motion to Dismiss for Failure to State a Claim under</u>

2         <u>CERCLA section 107(a)</u>

3         In the motion filed by the trustees, the WSC

4  partnership, and Montalvo, in which all other defendants join,

5  defendants argue that plaintiff, who voluntarily assumed initial

6  investigatory costs in furtherance of an environmental clean up,

7  cannot sue other potentially responsible parties ("PRPs") for

8  contribution under CERCLA in light of the Supreme Court's

9  decision in <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, 125

10 S. Ct. 577 (2004).  In the absence of a valid claim for

11 contribution under CERCLA, defendants ask the court to dismiss

12 Claim Three (seeking declaratory relief under CERCLA section

13 113(g)(2)),[1] and to refuse to exercise supplemental jurisdiction

14 over the remaining state law claims.

15        Prior to the Supreme Court's decision in <u>Aviall</u>, a PRP

16 like plaintiff, who voluntarily incurred clean up costs to

17 remediate environmental contamination, could unquestionably seek

18 contribution from other PRPs.  <u>See</u> <u>Pinal Creek Group v. Newmont</u>

19 <u>Mining Corp.</u>, 118 F.3d 1298 (9th Cir. 1997); <u>W. Props. Serv.</u>

20 <u>Corp. v. Shell Oil Co.</u>, 358 F.3d 678, 685, 689-90 (9th Cir. 2004)

21 (explaining <u>Pinal Creek</u>).  In <u>Pinal Creek</u>, the Ninth Circuit

22 explained that such a right was evident from the historic

23 _____

24        [1] CERCLA section 113(g)(2) only authorizes declaratory
   relief in a section 107 cost recovery action, which, as the
25 discussion below explains, is distinguishable from a suit for
   contribution.  However, despite the lack of textual support, the
26 Ninth Circuit has held that declaratory relief allocating future
   costs in contribution actions is appropriate.  <u>Boeing Co. v.</u>
27 <u>Cascade Corp.</u>, 207 F.3d 1177, 1191 (9th Cir. 2000).  Nothing in
   the statute prohibits such relief and it is "consistent with the
28 broader purposes of CERCLA."  <u>Id.</u>

                                  6

implicit right to contribution in section 107, the "contours and mechanics" of which are governed by section 113 (which addresses how to apportion liability among PRPs).  118 F.3d at 1301-02; W. Props., 358 F.3d at 685 ("Pinal Creek held that the enactment of § 113 in 1986 did not replace the implicit right to contribution many courts had recognized in § 107(a).").  In so holding, the Ninth Circuit effectively created "a hybrid action under sections 107(a)(4)(B) and 113(f), with the former provision creating the implied right of contribution, and the latter qualifying the nature of that claim."  Craig N. Johnston, Current Landowner Liability Under CERCLA: Restoring the Need for Due Diligence, Fordham Envtl. L.J. 401, 467 n.246 (1998).  Accordingly, voluntarily incurred clean up costs were partially recoverable in an action that asserted "both a § 107(a) response-cost recovery and a § 113(f)(1) contribution claim . . . ."  W. Props., 358 F.3d at 685 (emphasis added).

However, in Aviall, the Supreme Court held that a PRP cannot seek clean up cost contributions from other PRPs under CERCLA section 113(f)(1) for voluntarily incurred clean up costs. To assert a section 113(f) claim, a PRP must first be compelled to incur clean up expenses through a suit for response costs under section 106 or 107(a).  Id. at 584.  The Court pulled this requirement straight from the statute's text, which allows "[a]ny person [to] seek contribution from any other person who is liable or potentially liable under section [107](a) of this title, during or following any civil action under section [106] of this title or under section [107](a) of this title."  42 U.S.C. § 9613.

7

1        Plaintiff in this case, as the current owner of the

2   Center, is a PRP who has not yet been sued for response costs

3   under section 106 or 107, and would thus appear to be unable to

4   bring a section 113(f) contribution claim against other PRPs in

5   light of Aviall. (Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 8

6   ("Adobe . . . does not dispute that by virtue of its status as

7   the current owner of the Center, it is also a PRP"); see also 42

8   U.S.C. § 9607(a)(1) (defining "the owner and operator of a vessel

9   or a facility" as a "covered person" under CERCLA).

10       Aviall did not, however, foreclose the possibility that

11  voluntary cleaners who are also PRPs can still sue for

12  contribution, despite their inability to meet the procedural

13  requirements of a section 113(f)(1) contribution action.  The

14  Court remained open to the possibility that PRPs may "pursue a

15  section 107(a) [cost recovery] action against other PRPs for

16  joint and several liability."[2]  Aviall, 125 S. Ct. at 585.  It

17  also left open the possibility that a PRP "may pursue a § 107

18  cost recovery action for some form of liability other than joint

19  and several."  Id. at 585.  Finally, the Court professed to have

20  left undecided "whether any judicially implied right of

21  _____

22       [2]  "Contribution" is specifically addressed in section
    113, which provides for an equitable allocation of responsibility
23  between PRPs.  "Cost recovery" is addressed in section 107, which
    permits the government or a private party who has incurred
24  response costs to hold a PRP jointly and severally liable for
    those costs (meaning 100% liable, regardless of the particular
    PRP's contribution).  Fireman's Fund Ins. Co. v. City of Lodi,
25  302 F.3d 928, 945-46 (9th Cir. 2002).  Some courts, including the
    Ninth Circuit, have denied PRPs the right to sue each other for
26  cost recovery, because liability among PRPs is "several-only,"
    not joint and several.  Pinal Creek, 118 F.3d at 1303.  Thus, "a
27  PRP is not entitled to recover all its response costs from other
    PRPs, but instead is limited to asserting a claim for
28  contribution."  Id. at 1302.

8

contribution survived the passage of [the Superfund Amendments and Reauthorization Act of 1986 ("SARA")]." Id. at 586. But see id. at 582 & n.3 (noting that the right to cost recovery in certain circumstances under 107(a) is "clearly distinct" from the right to contribution under section 113(f)); id. at 583 ("There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions.").[3] This court must therefore consider how the Ninth Circuit has resolved, or will resolve, these questions that the Supreme Court did not.

Applying any one of the theories left open by the Supreme Court, in this case, is problematic because the Ninth Circuit's pre-Aviall precedents assumed a cost recovery suit was not a prerequisite for a § 113(f) contribution action. See Pinal Creek, 118 F.3d at 1301-02; W. Props., 358 F.3d at 685. Furthermore, the prior Ninth Circuit case law established that a claim under § 113(f) is a necessary component of the voluntary cleaner's cause of action. W. Props., 358 F.3d at 685. The cases stressed that a PRP cannot assert a naked section 107(a)

---

[3] At the very least, the Court cast serious doubt on the future application of the pre-SARA implied right to contribution under section 107. The Court noted that since its inception, the right, recognized under the auspices of federal common law, "was debatable in light of two decisions . . . that refused to recognize implied or common-law rights to contribution in other federal statutes." Aviall, 125 S. Ct. at 581 (citing Tex. Indus., Inc., v. Radcliff Materials, Inc., 451 U.S. 630, 638-47(1981); Nw. Airlines, Inc. v. Transp. Workers, 451 U.S. 77, 90-99 (1981)); see also Kotrous v. Gross-Jewett Co., No. CIV.S-02-1520, 2005 WL 2452606, at *3 (E.D. Cal. Oct. 4, 2005) ("The Court [in Aviall] . . . express[ed] considerable skepticism regarding whether courts should find . . . an implied right [to contribution].").

9

1   claim against other PRPs because such claims are for joint and

2   several liability and a PRP's liability is "several-only."  <u>Pinal</u>

3   <u>Creek</u>, 118 F.3d at 1303, 1306; <u>id.</u> at 1302 (opining that "a PRP

4   is not entitled to recover all its response costs from other

5   PRPs" because, by definition, a PRP is partially responsible for

6   some of the costs); <u>id.</u> at 1303 ("[A] CERCLA claim by a PRP

7   against another PRP is necessarily for contribution.").

8          Evidently then, the first question left open in

9   <u>Aviall</u>, whether PRPs have a cost recovery claim for joint and

10  several liability, has already been answered in the negative by

11  the Ninth Circuit in <u>Pinal Creek</u>.  Likewise, the second question,

12  whether PRPs may pursue a section 107 <u>cost recovery</u> action for

13  some form of liability other than joint and several, also appears

14  to be decided in this circuit.  <u>Pinal Creek</u> held that a PRP does

15  not have a <u>cost recovery action</u> and instead has only a

16  <u>contribution action</u>, implicitly provided by section 107 and

17  regulated by the terms of section 113.  118 F.3d at 1305 n.7.

18         Moreover, the Ninth Circuit has stated more than once

19  that the language and structure of CERCLA create an action for

20  cost recovery based only on joint and several liability.  <u>W.</u>

21  <u>Props.</u>, 358 F.3d at 690 (refusing to read into the section 107

22  cost recovery action, against its language, authority to allocate

23  liability proportionally); <u>Fireman's Fund Ins. Co. v. City of</u>

24  <u>Lodi</u>, 302 F.3d 928, 945 (9th Cir. 2002) (recognizing, in dicta,

25  that in a section 107 action for cost recovery, "liability <u>is</u>

26  joint and several" (emphasis added)); <u>State v. Montrose Chemical</u>

27  <u>Corp. of Cal.</u>, 104 F.3d 1507, 1518 n.9 (9th Cir. 1997) (same).

28  <u>But see</u> <u>Price v. U.S. Navy</u>, 39 F.3d 1011, 1018 (9th Cir. 1994)

10

(affirming the imposition of proportionate liability, without
discussing the relationship between sections 107 and 113, because
"CERCLA <u>does not mandate</u> the imposition of joint and several
liability" and simply allows for "it in cases of indivisible
harm").[4]

Although some wiggle room may remain, Ninth Circuit
case law does not seem to be amenable to plaintiff's argument
that partial indemnity is achievable in a section 107 cost
recovery action. <u>W. Props.</u>, 358 F.3d at 690 ("A non-innocent
landowner cannot recover its costs jointly and severally from the
polluters, <u>nor can it recover them through indemnity</u>, as distinct
from contribution." (emphasis added)). <u>But see Adobe Lumber</u>,

---

[4] As one author has noted, joint and several liability under
CERCLA is a creation of the courts.  Language explicitly
providing joint and several liability was actually removed from
the final version of the bill.  Lynda J. Oswald, <u>New Directions
in Joint and Several Liability Under CERCLA?</u>, 28 U.C. Davis L.
Rev. 299, 323 (1995).  Consequently,

> CERCLA was enacted with no express statutory
> provision for joint and several liability, although
> its legislative history revealed a strong
> commitment to such a standard on the part of the
> legislation's sponsors (and an equally strong
> rejection of the concept on the part of the
> legislation's opponents).  Faced with this backdrop
> of congressional discordance and statutory silence,
> the courts did indeed create a federal common law
> of joint and several liability under CERCLA . . . .
> Overall, Congress seemed satisfied with early
> judicial efforts in this area.  When CERCLA was
> amended in 1986 by the Superfund Amendment and
> Reauthorization Act (SARA), Congress declined to
> alter the joint and several liability standard that
> had evolved over the previous six years.

<u>Id.</u> at 323-24.

Therefore, although the text of the statute could be read,
as the Supreme Court observed, to support "a § 107 cost recovery
action for some form of liability other than joint and several",
the Ninth Circuit's repeated statements that liability under
section 107 <u>is</u> joint and several counsel against a decision by
this court that some other form of liability presently exists.

1  Inc. v. Taecker, No. CIV. S-02-186, 2005 WL 1367065, at *6 (E.D.
2  Cal. May 24, 2005) (reading Pinal Creek to recognize that such a
3  right existed prior to SARA).

4          Questions also remain as to whether PRPs in the Ninth
5  Circuit can travel the third avenue for relief left open in
6  Aviall.  Did the implicit right of contribution, as construed by
7  the Ninth Circuit, survive SARA completely intact?  Pinal Creek
8  does not so hold, for that decision addressed how SARA modified
9  the historical right of contribution by introducing the machinery
10 to govern, regulate, and qualify contribution claims.  118 F.3d
11 at 1302.  The opinion did not establish that an independent
12 implied right to contribution still exists, and instead held that
13 a PRP's right to claim contribution from other PRPs is controlled
14 by the "joint operation" of sections 107 and 113.  W. Props., 358
15 F.3d at 685; see also Pinal Creek, 118 F.3d at 1304 (citing with
16 approval other circuit court decisions that "reject[ed] the
17 argument that the PRP's claim was governed exclusively by §
18 107"); City of Rialto v. U.S. Dep't of Defense, Nos. CV 04-0079,
19 CV 04-00759, 2005 U.S. Dist. LEXIS 26941, at *16 (C.D. Cal. Aug.
20 16, 2005) (noting that in the Ninth Circuit, "the implicit right
21 to contribution in 107(a) is not a cause of action which exists
22 independently of § 113(f)").  As a result, the implied right of
23 contribution in the Ninth Circuit does not appear to have
24 completely survived SARA.  Rather, SARA changed and qualified the
25 right by providing "details . . . that were missing from the text
26 of § 107."  Pinal Creek, 118 F.3d at 1301.

27          In light of Aviall's determination that a PRP
28 necessarily fails to meet the qualifications of section 113(f) if

it has not first been sued under sections 106 or 107, plaintiff
here cannot bring suit pursuant to the implied right of
contribution recognized in <u>Pinal Creek</u>.[5]   That right has been
coupled with the requirements of section 113(f), which under
<u>Aviall</u>, plaintiff has not satisfied.   <u>See</u> <u>id.</u> at 1306 ("[A] claim
asserted by a PRP under § 107 <u>requires</u> application of § 113 . . .
." (emphasis added)).   Until the Ninth Circuit cuts the implied
right to contribution under section 107(a) loose from the
moorings of section 113(f),[6] PRPs in this circuit, like plaintiff
here, who have voluntarily incurred clean up costs, will want for

---

   [5] The Ninth Circuit's decision in <u>Western Properties</u> failed
to preserve <u>Pinal Creek</u>'s construction of a section 107(a) right
of contribution.   Released while the Supreme Court was still
mulling over its decision in <u>Aviall</u>, <u>Western Properties</u> sought to
head off any change in the <u>Pinal Creek</u> approach that the result
in <u>Aviall</u> might require.   These efforts were in vain.   First, the
Ninth Circuit's assumption in <u>Western Properties</u> that "a § 106
action or a § 107(a) action is not a necessary condition for
bringing a § 113 action" was expressly rejected in <u>Aviall</u>.
<u>Compare</u> <u>W. Props.</u>, 358 F.3d at 685, <u>with</u> <u>Aviall</u>, 125 S. Ct. at
584.   Likewise, its assertion that a section 107(a) response cost
recovery claim filed contemporaneously with a section 113(f)(1)
contribution claim could serve as the "civil action . . . under
section [107](a)," as required by section 113(f)(1), was also
implicitly rejected in <u>Aviall</u>.   The Supreme Court there observed
that to assert a contribution claim under § 113(f), a party must
have "<u>been</u> subject to" an action under sections 106 or 107(a).
<u>Id.</u> at 584 (emphasis added).   A PRP's own simultaneous action for
cost recovery does not satisfy the requirements of section 113(f)
and the rule of <u>Pinal Creek</u> cannot get around this requirement.

   [6] Indeed, the Ninth Circuit may do just that.   In <u>Pinal</u>
<u>Creek</u>, the court rejected as simply wrong plaintiff's argument
that, as a voluntary cleaner, it would "not be entitled to assert
a contribution claim under § 113(f) . . . because it ha[d] not
incurred any liability which would trigger such an action."
<u>Pinal Creek</u>, 118 F.3d at 1305.   In retrospect and in light of
<u>Aviall</u>, the <u>Pinal Creek</u> plaintiff's fears were actually
legitimate.
   Alternatively, of course, Congress could change the language
of section 113 and expand the contribution right to parties who
voluntarily assume clean up responsibilities.   Or, as recognized
above, the court could recant its prior statements that liability
under section 107 is joint and several.

1  a clear right to seek contribution from other PRPs.[7]

2          Thus, defendants have made a compelling argument that
3  the Ninth Circuit's prior decisions now frustrate a PRP's ability
4  to seek relief based on a theory left open in Aviall.   The
5  undersigned fails to find support for granting a PRP the right to
6  sue for partial indemnity under the provisions of section 107
7  alone, given that the Ninth Circuit has previously declined
8  invitations to do same.   See W. Props., 358 F.3d at 690.   Nor
9  can the undersigned see how a PRP's right of contribution for
10 voluntarily incurred costs in the Ninth Circuit, forged from
11 sections 107(a) and 113(f), could have survived Aviall, which
12 took away a necessary component of the circuit's recognized cause
13 of action.   The combination of Aviall and Pinal Creek/Western
14 Properties has muddied an issue that was once clear.   See
15 Kotrous, 2005 WL 2452606, at *4 (granting a motion for
16 certification for interlocutory appeal and to stay the
17 proceedings because a PRP's rights after Aviall are uncertain).

18 _____

19        [7] The potential for this approach to "hamper . . . voluntary
   environmental responses by private parities to the threat posed
20 by hazardous waste sites" is, regrettably, of no moment.   Id. at
   1304.   Although CERCLA aimed to "induce [liable] persons
21 voluntarily to pursue appropriate environmental response
   actions," the court cannot entertain policy considerations when
22 it is otherwise constrained by "the controlling text, structure,
   and logic of CERCLA and . . . precedent . . . ."   H.R. Rep. No.
23 96-1016(I), at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 6119,
   6120; Pinal Creek, 118 F.3d at 1304.   Moreover, other incentives,
24 such as a desire to protect on-going operations, to control clean
   up costs, or to avoid unrecoverable legal fees associated with a
25 contribution action, may still motivate PRPs to conduct voluntary
   clean ups.   See Pinal Creek, 118 F.3d at 105; see also Key Tronic
26 Corp. v. United States, 511 U.S. 809, 819 (1994) (holding that "§
   107 does not provide for the award of private litigants'
27 attorney's fees").   Therefore, the court's conclusion that, in
   light of Aviall, Ninth Circuit law no longer clearly supports a
28 contribution right for PRPs, does not necessarily undermine
   CERCLA's intentions.

                              14

1          Nevertheless, despite the obstacles identified here,

2     the court has difficulty imagining that the Ninth Circuit would

3     prevent PRPs from pursuing contribution claims for clean up costs

4     incurred voluntarily.  This circuit has for some time recognized

5     such a right and the Supreme Court left open several possible

6     avenues for continuing the practice.  Thus, one might reasonably

7     expect that the Ninth Circuit will find a way to reconcile one of

8     the Court's proposed approaches with its existing case law.

9     Additionally, other judges in this district have held, post-

10    Aviall, that PRPs who clean up voluntarily still have a

11    contribution action.  See, e.g., Kotrous v. Gross-Jewett Co., No.

12    CIV. S-02-1520, 2005 WL 1417152, at *3 (E.D. Cal. June 16, 2005)

13    ("[U]nder controlling Ninth Circuit precedent, a PRP may maintain

14    a claim for contribution under § 107(a)."); Kotrous, 2005 WL

15    2452606, at *1 (explaining further that the June 16, 2005 order

16    concluded that the "implied right of contribution in CERCLA

17    section 107(a) [is] independent of section 113(f)"); Adobe

18    Lumber, 2005 WL 1367065, at *6 (concluding that, in the wake of

19    Aviall, a "§ 107 claim is construed as it was before the

20    congressional enactment of § 113").

21         It therefore seems prudent at this juncture, in the

22    interest of providing litigants in this district with certainty,

23    to continue to recognize plaintiff's cause of action under

24    CERCLA.[8]  Consequently, the court is disinclined to dismiss

25

26         [8] The law applied in a particular case should not wholly
      depend on which judge was randomly-selected to hear it.   This
27    principle especially holds true in this case, where plaintiff has
      already successfully defended against the exact legal argument
28    made here in another action based on these same facts.  Adobe

1  plaintiff's claim for contribution at this time.  A definitive

2  statement on this matter is likely forthcoming, as several of the

3  post-<u>Aviall</u> cases cited above have already reached the Ninth

4  Circuit on appeal.  <u>See</u> <u>City of Rialto v. U.S. Dep't of Defense</u>,

5  No. 05-56749 (9th Cir. filed Nov. 5, 2005) (scheduled to be fully

6  briefed in April, 2006); <u>Kotrous v. Gross-Jewett Co.</u>, No.

7  05-80120 (9th Cir. filed Oct. 21, 2005).  Thus, pending

8  resolution by the Ninth Circuit of the question presented here,

9  this court thinks it best to stay any discovery in this case.

10 "Because the issue before the Ninth Circuit may be dispositive of

11 plaintiff's federal claims, a stay . . . at this point will

12 promote economy of time and effort for both the parties and the

13 court."  <u>Kotrous</u>, 2005 WL 2452606, at *5; <u>see also</u> <u>CMAX, Inc. v.</u>

14 <u>Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962) ("A district court has

15 inherent power to control the disposition of the causes on its

16 docket in a manner which will promote economy of time and effort

17 for itself, for counsel, and for litigants.").

18       C.   <u>Motion to Dismiss Claims Nine, Ten, and Eleven as Time</u>

19            <u>Barred</u>

20       Defendants Occidental and PPG, joined by Hoyt, ("the

21 manufacturer defendants") separately move to dismiss the Ninth,

22 Tenth, and Eleventh Claims for strict products liability,

23 negligence, and negligence per se.  These claims are brought only

24 against these three defendants and are opposed as being untimely.

25 The parties agree that California Code of Civil Procedure §

26 338(b), which provides a three year statute of limitations,

27

28 <u>Lumber</u>, 2005 WL 1367065 at *4.

16

controls these claims and that the California delayed discovery rule governs when the limitations period commenced.[9]   (Pl.'s Opp'n to Def. Manufacturer's Mot. to Dismiss 1.)   The dispute here focuses solely on the application of that rule and whether plaintiff has satisfied the rule's requirements.

The delayed discovery rule tolls the statute of limitations, which "begins to run when the plaintiff has reason to suspect an injury and some wrongful cause," if "the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."   Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803 (2005).   The rule allows causes of action based on distinct types of wrongdoing to accrue at different times, even though the claims arise out of the same injury to the plaintiff.   Id. at 814 (allowing plaintiff who timely sued for medical malpractice to file a products liability claim for defective medical tools that would have been barred if the limitations period commenced when

---

[9] CERCLA's § 9658 governs the commencement of limitations periods in all claims, including those under state law, for personal injury relating to environmental contaminants.   O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1149 (9th Cir. 2002). Under this statute, "if a state statute of limitations provides a commencement date for claims of personal injury resulting from release of contaminants that is earlier than the commencement date defined in § 9658, then plaintiffs benefit from the more generous commencement date."   Id. at 1146.   Because the California discovery rule looks at when plaintiff had reason to suspect, rather than reason to know, of his injury, the Ninth Circuit has held that CERCLA preempts California's discovery rule.   Id. at 1146.   However, under the facts of this case, the court doubts that § 9658 would be more permissive than the California discovery rule.   See 42 U.S.C. § 9658 (commencement date is "the date the plaintiff . . . reasonably should have known that the . . . property damages . . . were caused or contributed to by the . . . contaminant concerned").   In addition, the parties have not argued that § 9658 should apply.

plaintiff first learned she had been injured);  Fireman's Fund Ins. Co. v. Sparks Const., Inc., 114 Cal. App. 4th 1135, 1150 (2004) (following the rule that regardless of when a party learns of an injury, claims for negligence and strict products liability are subject to the discovery rule and "[do] not accrue until discovery of the defect.").  To invoke it, plaintiff "must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence."  Id. at 815.

Plaintiff first learned that the Center was contaminated in August 2001, which would normally be the date its claims accrued, as it was aware of the injury (property damage) and its cause (discharge of hazardous waste) on that date. Dyniewicz v. United States, 742 F.2d 484, 487 (9th Cir. 1984) (holding that a cause of action accrues when plaintiff learns of an injury and the act that caused it, not when plaintiff discovers that negligence may have contributed to the injury); Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) ("The general rule for defining the accrual of a cause of action sets the date as the time . . . the wrongful result occurs. . . . An exception to [this] rule . . . is the discovery rule.").  Thus, given the applicable three year statute of limitations, Claims Nine, Ten, and Eleven, filed on July 25, 2005, are potentially untimely.  To avoid this bar, plaintiff relies on the discovery rule and its allegations that it did not know that the manufacturer defendants

had "designed their products[10] and instructed and directed dry
cleaners to install dry cleaning equipment specifically to
discharge solvent-containing wastewater into drains" until 2004.
(First Am. Compl. ¶¶ 29, 35.)  The complaint is silent regarding
plaintiff's diligence in discovering these facts[11] and plaintiff's
claims as drafted thus cannot be saved by California's delayed
discovery rule.  McKelvey v. Boeing N. Am., Inc., 74 Cal. App.
4th 151, 160 n.11 (1999) ("[P]laintiff must plead (and later
prove) the facts showing . . . [that] in the exercise of
reasonable diligence the facts could not have been discovered at
an earlier date").

        Plaintiff correctly points out that the heightened
pleading standard of the discovery rule seems to conflict with
the liberal notice pleading standard in Federal Rule of Civil
Procedure 8(a)(2).  However, the Ninth Circuit has unequivocally
held that in order to rely on a defense to a statute of
limitations challenge provided by state law, plaintiff must meet
the pleading requirements of that state law.  Cal. Sansome Co. v.
U.S. Gypsum, 55 F.3d 1402, 1407 (9th Cir. 1995) (recognizing that

_____

        [10] The manufacturer defendants argue that language in the
complaint could be read to suggest that plaintiff's product
liability claims rest on an inherently defective product design
theory. (Pl.'s Opp'n to Def. Manufacturers' Mot. to Dismiss 10.)
However, plaintiff clarified in its opposition brief that it
seeks relief only on "a classic product liability claim based on
inadequate product warnings and instructions."  (Id.)

        [11] Plaintiff states in its complaint that it conducted a
"diligent investigation", but this is a conclusion, not a fact.
See Leonard v. Coll. Network, Inc., No. C-04-00836, 2004 WL
2944050, at *4 (N.D. Cal. Dec. 17, 2004) ("Mere conclusory
assertions that delay in discovery was reasonable are
insufficient . . . ." (quoting CAMSI IV v. Hunter Tech. Corp.,
230 Cal. App. 3d 1525, 1536-37 (1991)).

1    "plaintiff must allege specific facts establishing the

2    applicability of the discovery-rule exception" but need not

3    "specifically allege when the cause of action accrued"); <u>Gallardo</u>

4    <u>v. DiCarlo</u>, 203 F. Supp. 2d 1160, 1169 n.13 (C.D. Cal. 2002)

5    (refusing to apply the discovery rule because plaintiff failed to

6    plead facts addressing the time and manner of discovery and

7    plaintiff's diligence).   Claims Nine, Ten, and Eleven are

8    therefore dismissed without prejudice.

9           D.    <u>Motion to Dismiss Defendant Hoyt</u>

10           Defendant Hoyt, the manufacturer of the equipment used

11   in the Taecker's dry cleaning business, argues that it is not a

12   liable party under CERCLA and thus seeks dismissal of Claims Two

13   and Three (arising from CERCLA liability) and Claims Four and

14   Five (arising from liability under California's HSAA, which is

15   conceptually similar to CERCLA).   Hoyt also argues that Claims

16   Six, Seven, and Eight fail to sufficiently allege a cause of

17   action for nuisance and trespass.

18           The Ninth Circuit has construed arranger liability

19   under CERCLA as limited to those who (1) owned or possessed the

20   hazardous materials at issue or (2) had some authority to control

21   or duty to dispose of them.   <u>United States v. Shell Oil Co.</u>, 294

22   F.3d 1045, 1058 (9th Cir. 2002).   Plaintiff does not contend that

23   Hoyt ever owned or possessed the PCE responsible for

24   contamination at the center and alleges only that Hoyt

25   "[e]ffectively directed and controlled the discharge of PCE into

26   the environment through their design and/or marketing of dry

27   cleaning equipment [and] instructions, advice, and directions

28   regarding assembly, installation, use and repair of the

                                  20

1  equipment."  (First Am. Compl. ¶ 27(h).)

2          Hoyt correctly points out that the manufacturer of dry
3  cleaning equipment who does nothing more than provide the
4  machines and operating instructions is not an "arranger" of waste
5  disposal under CERCLA.  Cal. Dep't of Toxic Substances Control v.
6  Payless Cleaners, 368 F. Supp. 2d 1069 (E.D. Cal. 2005)
7  (determining that discharge instructions in operating manual are
8  insufficient to support arranger liability; annual inspections of
9  the equipment are possibly sufficient).[12]  In a recent decision on
10 a motion to dismiss in this district, Judge Karlton faced a
11 similar situation.  In Payless Cleaners, a PRP owner of a dry
12 cleaning business sought contribution under CERCLA from the
13 manufacturer of the dry cleaning equipment.  Id. at 1075.
14 Compared with plaintiff's allegations against Hoyt in this case,
15 the plaintiff in Payless Cleaners alleged that Norge, the
16 manufacturer, was much more involved in the dry cleaner's
17 business.  Significantly, the operations at issue involved a
18 franchise agreement and the manufacturer not only designed the
19 machines and provided instructions on their use, but also
20 selected the location of the machines, installed them, and
21 annually inspected them.  Id. at 1080.  In the end, Norge's
22 installation activities sealed their fate, as they put Norge in a
23 position to "actually control the disposal of the waste water

24

25         [12] See also Berg v. Popham, 307 F.3d 1028 (9th Cir. 2004)
   (underlying district court case held that manufacturer of a
26 machine that facilitated the disposal of hazardous chemicals is
   not liable under CERCLA); Berg v. Popham, 113 P.3d 604, 609
27 (Alaska 2005) (adopting "a standard of arranger liability that is
   broader than that of the Ninth Circuit" and includes "actions
28 such as designing, installing, or connecting a system that
   disposes of waste on behalf of a third party").

1   laden with PCE." Id. Notably, however, the court rejected the

2   plaintiff's arguments that product design and operating

3   instructions were the proper grounds for a CERCLA contribution

4   claim based on arranger liability.

5          As noted, plaintiff seeks to hold Hoyt responsible for

6   arranger liability based on product design and operating

7   instructions. But it also alleges more generally that Hoyt

8   "[e]ffectively directed and controlled the discharge of PCE into

9   the environment . . . ." Given the liberal notice pleading

10  standard proscribed by Federal Rule of Civil Procure 8(a), such

11  allegations are sufficient to survive a motion to dismiss. At

12  the pleading stage, plaintiff need not describe in detail every

13  way by which Hoyt controlled the discharge. General allegations

14  of Hoyt's involvement have given it fair notice of the claims

15  against it, which is all that the federal standard requires. If

16  plaintiff's claims for arranger liability are indeed

17  unmeritorious, then Hoyt will be able to use the "liberal

18  discovery rules and summary judgment motions" to expose any legal

19  weaknesses in plaintiff's claims well before trial. Swierkiewicz

20  v. Sorema N.A., 534 U.S. 506, 512 (2002). Accordingly, the court

21  refuses to dismiss Claims Two and Three as to Hoyt.[13]

22         Claims Four and Five, alleging violations of

23

24         [13] The court notes that in permitting plaintiff to move
    forward with its allegations of arranger liability against Hoyt,
25  it does not question Judge Karlton's reasoning in Payless
    Cleaners, where the court held that arranger liability must be
26  based on more than the mere provision of instructions regarding
    disposal. Rather, the court here simply finds that the language
27  in plaintiff's complaint is sufficiently broad enough to cover
    control based on activities other than those specifically
28  described in the complaint.

California's HSAA, are likewise still alive in this action.
HSAA, although not identical in all respects, "incorporates many
CERCLA concepts." Foster-Gardner, Inc. v. Nat'l Union Fire Ins.
Co., 18 Cal. 4th 857, 865 n.4 (1998).  The definition of arranger
liability in particular is one such concept.  Cal. Health &
Safety Code § 25323.5(a)(1) ("'Responsible party' . . . means
those persons described in Section 107(a) of the federal act . .
. .").  Consequently, because plaintiff has sufficiently alleged
that Hoyt is an arranger under the federal law, it has also
sufficiently alleged arranger liability under HSAA.

        Similarly contrary to Hoyt's contentions, plaintiff has
sufficiently alleged claims of nuisance and trespass.
Notwithstanding an effort to come within the California delayed
discovery rule, plaintiff need only set forth "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2); Leatherman v. Tarrant County
Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168,
(1993); see also Sullivan ex rel. Sullivan v. Vallejo City
Unified Sch. Dist., 731 F. Supp. 947, 955 (E.D. Cal. 1990)
(recognizing that federal rules of civil procedure apply to state
law claims when a court exercises pendent jurisdiction).  "The
Federal Rules of Civil Procedure do not require a claimant to set
out in detail the facts upon which he bases his claim."
Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A
complaint need only "give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests."
Conley, 355 U.S. at 47.

        Hoyt argues that plaintiff has not sufficiently pled

23

1  causation.  Specifically, plaintiff has not alleged that the

2  operators of the dry cleaning business actually relied on

3  disposal instructions provided by Hoyt and defendant claims this

4  omission is fatal.  (Def. Hoyt's Mot. to Dismiss 9.)  However,

5  Hoyt has notice of plaintiff's claims (nuisance and trespass) as

6  well as the grounds upon which they rest (provision of

7  instructions).  Plaintiffs need not allege every detail of their

8  claims at the pleading stage, they need only allege facts

9  sufficient to "implicate [i.e., suggest] the relevant legal

10 theories."  Westways World Travel v. AMR Corp., 182 F. Supp. 2d

11 952, 955 (C.D. Cal. 2001) (quoting Schott Motorcycle Supply, Inc.

12 v. Am. Honda Motor Co., 976 F.2d 58, 62 (1st Cir. 1992)); Woods

13 v. Reno Commodities, Inc., 600 F. Supp. 574, 578 (D. Nev. 1984)

14 ("All elements that give rise to a legal basis for recovery need

15 not be stated precisely, so long as fair notice of the nature of

16 the action is provided." (citation omitted)).  Plaintiff here has

17 met this standard.  Cf. Payless Cleaners, 368 F. Supp. 2d at 1081

18 (allegations that defendant "designed and installed the machines

19 and instructed the [operators] to dispose of wastes in a manner

20 that resulted in a public nuisance" are sufficient pleadings).

21 III. Conclusion

22      Defendants make a plausible argument that the

23 combination of Supreme Court and Ninth Circuit law has eliminated

24 a PRP's right to contribution for clean up activities undertaken

25 voluntarily.  However, in the interest of providing litigants

26 with a uniform cause of action in this circuit and in light of

27 pending appeals on this matter, the court will not dismiss

28 plaintiff's claim for contribution under CERCLA section 107(a)

24

1  and will postpone discovery on this claim until the Ninth Circuit

2  offers more guidance on its viability.  The court also holds that

3  plaintiff has sufficiently pled claims of nuisance and trespass.

4  Likewise, plaintiff has properly pled claims under CERCLA and

5  HSAA for relief against Hoyt, the manufacturer of the dry

6  cleaning equipment.  Plaintiff's claims for strict product

7  liability, negligence, and negligence per se against the

8  manufacturer defendants, as pled, are, however, time barred.

9          IT IS THEREFORE ORDERED that defendants' motion to

10  dismiss for failure to state a claim of contribution under CERCLA

11  section 107(a) be, and the same hereby is, DENIED.

12          IT IS FURTHER ORDERED that defendants' motion to

13  dismiss the Ninth, Tenth, and Eleventh Claims as time barred be,

14  and the same hereby is, GRANTED.

15          IT IS FURTHER ORDERED that defendant Hoyt's motion to

16  dismiss be, and the same hereby is, DENIED.

17          Plaintiff is given 30 days from the date of this order

18  to file an amended complaint consistent with this order.

19  Discovery in this matter is STAYED pending the Ninth Circuit's

20  resolution of a PRP's right to contribution for voluntarily

21  incurred clean up costs.

22  DATED:  January 3, 2006

23

24  _____

25  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

26

27

28