UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ADOBE LUMBER, INC., a California corporation,<br><br>             Plaintiff,<br>      v.<br><br>F. WARREN HELLMAN and WELLS FARGO BANK, N.A., as Trustees of Trust A created by the Estate of Marco Hellman; F. WARREN HELLMAN as Trustee of Trust B created by the Estate of Marco Hellman; THE ESTATE OF MARCO HELLMAN, deceased; WOODLAND SHOPPING CENTER, a limited partnership; JOSEPH MONTALVO, an individual; HAROLD TAECKER, an individual; GERALDINE TAECKER, an individual; HOYT CORPORATION, a Massachusetts corporation; PPG INDUSTRIES, INC., a Pennsylvania corporation; OCCIDENTAL CHEMICAL CORPORATION, a New York corporation; CITY OF WOODLAND; and ECHO SALES & EQUIPMENT CO.,<br><br>             Defendants.<br>_____/<br>AND RELATED CROSSCLAIMS, COUNTERCLAIMS, AND THIRD PARTY CLAIMS.<br>_____/ | NO. CIV. 05-1510 WBS PAN<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>CITY OF WOODLAND'S MOTION TO</u><br><u>DISMISS</u> |

1

----oo0oo----

Plaintiff Adobe Lumber, Inc. filed this action in response to its discovery of contamination in the subsurface soil and groundwater of a retail property it owns in Woodland, California. Defendant City of Woodland ("City") now moves to dismiss plaintiff's claims for continuing trespass, continuing public nuisance, and continuing private nuisance pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I. Factual and Procedural Background

To avoid repetition of its January 4, 2006 Order, the court will limit its discussion to the factual and procedural events that are relevant to the City's pending motion. See Adobe Lumber, Inc. v. Hellman, 415 F. Supp. 2d 1070, 1072-74 (E.D. Cal. 2006), vacated on other grounds, Kotrous v. Goss-Jewett Co. of N. Cal., 523 F.3d 924, 934 (9th Cir. 2008).

Plaintiff is the owner of a shopping center located at 120 Main Street in Woodland, California. (Third Amended Complaint ("TAC") ¶¶ 3, 23.) When plaintiff purchased the center in 1998, defendants Harold and Geraldine Taecker operated a dry cleaning business in Suite K, a location they had leased for that purpose since 1974. (Id. at ¶¶ 4, 20.) Plaintiff continued to lease this space to the Taeckers through October 2001. (Id. at ¶ 23.)

To conduct their dry cleaning operations between 1974 and 1991, the Taeckers used the solvent perchloroethylene (PCE), which they allegedly disposed of via the City's sanitary sewer system. (Id. at ¶ 28.) As a result of the Taeckers' disposal of

2

PCE into the sewer system, PCE contaminants allegedly passed through a public sewer main on Academy Lane that was located on City-owned property adjacent to plaintiff's property. (Id. at ¶ 30.) As opposed to carrying the contaminants away from plaintiff's property, the sewer main allegedly leaked PCE into the surrounding soil, and the PCE began migrating back to plaintiff's property. (Id. at ¶¶ 14, 31.)

According to plaintiff, the sewer main leaked PCE because of the City's "reactive, minimal and inadequate" management and maintenance of its sewer system. (Id. at ¶ 30.) Until the City "sleeved" off a portion of the sewer main on Academy Lane in May of 2005, the City had not performed maintenance on that sewer main since constructing it in 1926. (Id.) Plaintiff alleges that the City knew or should have known that the Taeckers were using PCE and disposing of it in the sanitary sewer system and that leaking sewer systems were a major source of PCE contamination. (Id. at ¶ 31.) Despite the City's purported knowledge, it allegedly failed to inspect its sewer main on Academy Lane or take other precautions. (Id.)

In 2001, after performing a "limited surface investigation" of its property, plaintiff discovered the presence of contaminants, including PCE, in its subsurface soil and groundwater. (Id. at ¶¶ 11, 34.) Plaintiff reported the contamination and initiated remediation efforts with the requisite regulatory agencies. (Id. at ¶¶ 35-36.) The resulting and continuing remediation costs plaintiff incurred prompted it to initiate an action against the Tackers in January of 2002 and, after voluntarily dismissing that action, initiate this action in

3

July of 2005.  (Id. at ¶ 37.)

When plaintiff filed its initial Complaint and First Amended Complaint on July 27, 2005 and August 29, 2005, respectively, plaintiff named the City as a defendant. Nonetheless, because plaintiff had yet to comply with the claim presentment requirements of the California Tort Claims Act (CTCA), see supra Part II.A, plaintiff's claims were not properly asserted against the City until it complied with the CTCA and filed its Second Amended Complaint (SAC) on February 3, 2006. Thirteen days after plaintiff filed its SAC, however, the court stayed this action after granting interlocutory appeal of its January 4, 2006 Order.  After the Ninth Circuit rendered a decision on the appeal, the case was reopened on May 15, 2008 and plaintiff filed its Third Amended Complaint (TAC) on June 27, 2008.

In its TAC, plaintiff asserts seven of its eleven claims against the City: 1) cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607-9675; 2) declaratory relief under CERCLA, id.; 3) contribution and indemnity under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSA"), Cal. Health & Safety Code §§ 25300-25395.12; 4) declaratory relief under the HSA, id.; 5) continuing public nuisance; 6) continuing private nuisance; and 7) continuing trespass.

The City now moves to dismiss plaintiff's claims for continuing public nuisance, continuing private nuisance, and continuing trespass pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

4

granted.[1]  The City alleges that plaintiff's nuisance claims are untimely, California Code of Civil procedure section 3482 bars plaintiff's nuisance claims, and California Government Code section 815 precludes plaintiff's trespass and nuisance claims. Plaintiff does not oppose the City's motion to dismiss its trespass claim.

II.  Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Dismissal is appropriate, however, where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Twombly, 127 S. Ct. at 1968 (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").  When examining a plaintiff's complaint, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from

---

[1] This Order applies only to plaintiff's nuisance and trespass claims as alleged against the City, not the City's co-defendants.

5

the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)

## A. Statute of Limitations

Nuisance claims can be characterized as either permanent or continuous. Baker v. Burbank-Glendale-Pasadena Airport Auth., 39 Cal. 3d 862, 868-69 (1985). A permanent nuisance exists if "by one act a permanent injury is done." To recover for that injury, a plaintiff is generally "required to bring one action for all past, present and future damage within [the statutory period] after the permanent nuisance is erected." Id. at 868-69 (citations and internal quotations omitted).

On the other hand, a nuisance is continuous if it "may be discontinued at any time," such as an "ongoing or repeated disturbance." Id. at 869; see also Mangini v. Aerojet-Gen. Corp., 12 Cal. 4th 1087, 1100 (1996) ("[T]he test for continuing nuisance is "whether the nuisance is reasonably abatable."). For a continuous nuisance, "'[e]very repetition of [the] continuing nuisance is a separate wrong,' subject to a new and separate limitation period." Capogeannis v. Superior Court, 12 Cal. App. 4th 668, 675 (1993) (citation omitted) (alteration in original). To recover damages for a continuing nuisance, a plaintiff must bring successive actions for damages to recover any "actual injury suffered prior to commencement of each action"[2] because

---

[2] In Renz v. 33rd Dist. Agricultural Ass'n, 39 Cal. App. 4th 61 (1995), the Sixth District Court of Appeal held that Baker's use of "commencement" was non-binding dicta. Id. at 67-68. After recognizing that other California Courts of Appeal had followed Baker's "commencement" standard, the Sixth District held that "damages incurred between the commencement and the conclusion of a continuing nuisance action should be recoverable

6

"[p]rospective damages are unavailable." Baker, 39 Cal. 3d at 869.

In its TAC, plaintiff alleges only claims for a continuing nuisance, which the City does not dispute. (TAC ¶¶ 83, 95; City's Mem. in Supp. of Mot. to Dismiss 7:6-9; Pl.'s Mem. in Opp'n to City's Mot. to Dismiss 7:10-12.) The City contends, however, that plaintiff's claims are temporally limited and untimely.

In general, a cause of action for nuisance accrues upon the "infliction of actual and appreciable harm." Shamsian v. Atl. Richfield Co., 107 Cal. App. 4th 967, 979 (2003); see also Cal. Gov't Code § 901 (establishing when a claim subject to section 911.2 accrues). Under the liberal standard governing a motion to dismiss, plaintiff sufficiently alleges that PCE remains on its property and continues to migrate to its property each day, thereby beginning the running of a new one-year statute of limitations on a daily basis. (See, e.g., TAC ¶ 82 ("For each day that PCE and the other wastes remain at and migrate to/from the Site, the nuisance continues.").)

---

in that action." Id.
    This court, however, is not aware of another state or federal court that has followed Renz. In fact, after the Sixth District decided Renz, the California Supreme Court and a California Appellate Court quoted Baker's "commencement" standard with approval. See Mangini v. Aerojet-Gen. Corp., 12 Cal. 4th 1087, 1103 (1996); Santa Fe P'ship v. Arco Prods. Co., 46 Cal. App. 4th 967, 976 (1996). Plaintiff does not request, nor does precedent require, this court to depart from Baker's "commencement" rule. Accord City of Rialto v. U.S. Dep't of Def., No. 04-0079, 2004 U.S. Dist. Lexis 27125, at *23-24 (C.D. Cal. July 12, 2004) ("This Court, however, declines to follow Renz, a decision rendered by an intermediate appellate court, considering the weight of authority prohibiting such a recovery.") (citations omitted).

7

The statute of limitations for a nuisance claim against a public entity is "one year after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). Before the expiration of the statute of limitations, and prior to bringing a claim against a public entity, the CTCA requires an injured party to submit a claim to the public entity. Id. § 911.2(a). If the public entity rejects the claim, the injured party then has six months from the date of the entity's rejection to file an action against the entity. Id. § 945.6(a)(1).

Plaintiff alleges it filed the requisite CTCA claim with the City on August 26, 2005 and subsequently filed this action within six months of the City rejecting its claim. (SAC ¶ 14.) Plaintiff is therefore entitled to seek damages for any injuries the City's alleged nuisance caused during the one-year period before plaintiff filed the requisite claim with the City (i.e., between August 27, 2004 and August 26, 2005). Any damages incurred prior to or after this time period, however, are untimely or outside the scope of plaintiff's requested relief.[3] Accordingly, the court will grant the City's motion to dismiss any claims with respect to injuries plaintiff incurred before

---

[3] The parties agree, and counsel for plaintiff expressly acknowledged at oral argument, that plaintiff is not seeking damages for any harm it incurred after August 26, 2005. (Pl.'s Opp'n to City's Mot. to Dismiss 8:2-6; City's Reply in Supp. of Mot. to Dismiss 2:9-10.) It is not clear, however, that the filing date of the CTCA claim necessarily serves as the closing date of plaintiff's potential recovery. See Amador Valley Investors v. City of Livermore, 43 Cal. App. 3d 483, 489-90 (1974) ("[A] plaintiff may recover on those items of damage which accrued within the applicable time period (here, one year) prior to the date of filing of the required [CTCA] claim [with the city] and also, without the necessity of filing successive claims, on such items as accrue after that date." (citation omitted) (emphasis added).

8

1  August 27, 2004.

2       Despite plaintiff's timely initiation of its claims for
3  injuries incurred between August 27, 2004 and August 26, 2005,
4  the City argues that the SAC did not provide the City with fair
5  notice of plaintiff's nuisance claims.  Specifically, the City
6  contends that the SAC's inclusion of its name in the headings for
7  the nuisance claims, but exclusion of its name in the factual
8  allegations following those claims, was insufficient to give the
9  City notice of the claims.

10      Under Federal Rule of Civil Procedure 8's liberal
11 pleading standard, "[p]leadings must be construed so as to do
12 justice," and the plaintiff need only contain "a short and plain
13 statement of the claim showing that the pleader is entitled to
14 relief."  Fed. R. Civ. P. 8(a)(2), (e); see also Sagana v.
15 Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) ("Under the liberal
16 rules of pleading, . . . [a]ll that is required is that the
17 plaintiff give 'fair notice' of the claim and its basis.")
18 (citations omitted).  The Federal Rules of Civil Procedure
19 "expressly allow adoption by reference and do not distinguish
20 between incorporated and unincorporated allegations."  Fontana v.
21 Haskin, 262 F.3d 871, 877 (9th Cir. 2001) (citing Fed. R. Civ. P.
22 10(c)).

23      When plaintiff's nuisance claims are read in their
24 entirety, it is clear that the SAC provided fair notice.  Via the
25 factual allegations supporting the nuisance claims--including the
26 factual allegations incorporated by reference--the City had
27 notice that plaintiff initiated its nuisance claims against the
28 City because: 1) the City allegedly failed to properly maintain,

9

manage, inspect, and repair its sewer main to prevent it from leaking (SAC ¶¶ 14, 30-31); 2) other defendants disposed of PCE in the City's sewer system, resulting in the leakage of PCE from the sewer main and migration to plaintiff's subsurface soil and groundwater; 3) the City knew or should have known about its leaking sewer main and the disposal of PCE into its sewer system (id. at ¶¶ 32-33, 78, 91); and 4) the PCE located at and migrating to plaintiff's property constitutes a continuous private and public nuisance.  (Id. at ¶¶ 79-82, 92-94.)  See Fontana, 262 F.3d at 876-77 (declining to read allegations in one cause of action independent from the factual allegations it incorporated).[4]

Accordingly, because the City had timely notice of plaintiff's temporally limited claims, the court will deny the City's motion to dismiss plaintiff's nuisance claims for injuries incurred between August 27, 2004 and August 26, 2005.

B.   California Civil Code Section 3482

As relevant to this case, section 3479 of the California Civil Code defines "nuisance" as "[a]nything which is injurious to health . . . so as to interfere with the comfortable enjoyment of life or property . . . ."  Cal. Civ. Code § 3479. Creating an exception to the general definition of "nuisance," however, section 3482 provides that "[n]othing which is done or

---

[4] The court questions the genuineness of the City's lack of notice argument as the City does not contend that plaintiff's CTCA claim was insufficient.  See Renteria v. Juvenile Justice, Dep't of Corr. & Rehab., 135 Cal. App. 4th 903, 909 (2006) (discussing the purposes of the CTCA's presentment requirement, including providing the public entity with "'prompt notice of a claim'") (citation omitted).

10

maintained under the express authority of a statute can be deemed a nuisance." Id. § 3482. Section 3482, therefore, "bars an action for nuisance against a public entity where the alleged wrongful acts are expressly authorized by statute." Friends of H Street v. City of Sacramento, 20 Cal. App. 4th 152, 160 (1993).

The California Supreme Court has "consistently applied a narrow construction to section 3482 and to the principle therein embodied." Greater Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal. 3d 86, 100 (1979); see also Varjabedian v. City of Madera, 20 Cal. 3d 285, 291 ("[T]he exculpatory effect of Civil Code section 3482 has been circumscribed by decisions of this court."). The section cannot bar a nuisance claim "unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury." Hassell v. City & County of San Francisco, 11 Cal. 2d 168, 171 (1938) (citation omitted) (emphasis added); see also Varjabedian, 20 Cal. 3d at 292 ("A requirement of 'express' authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability.").

To determine whether section 3482 precludes plaintiff from asserting its nuisance claims against the City, the court must perform a "'particularized' inquiry into each statute

11

[authorizing the conduct in question] to ascertain whether there existed a legislative intent to sanction a nuisance." <u>Greater Westchester Homeowners Ass'n</u>, 26 Cal. 3d at 101 (citation omitted).  Even if a statute authorizes an activity, "'the <u>manner</u> in which the activity is performed may constitute a nuisance.'"  <u>Id.</u> (citation omitted); <u>cf.</u> <u>Harding v. State ex rel. Dep't of Transp.</u>, 159 Cal. App. 3d 359, 362-63 (1984) ("When a public entity is authorized by statute to construct and maintain a facility and there is no evidence that the action was done in an unreasonable manner or is unreasonably noisy or dirty, no cause of action for nuisance exists.").

The City relies on seven sections from the Revenue Bond Law of 1941 ("RBA"), Cal. Gov't Code §§ 54300-54700, as authorizing its alleged inaction with respect to its sewer main. Specifically, section 54341 grants local agencies the power to "construct or improve any enterprise" and section 54342 grants local agencies the power to "operate, maintain, repair, or manage all or any part of any enterprise."  <u>Id.</u> §§ 54342, 54341; <u>see also</u> <u>id.</u> § 54309 (defining "enterprise" to include "[t]he collection, treatment or disposal of sewage, waste or storm water, including drainage"); <u>id.</u> § 54309.1 (defining the scope of "enterprise" to include "[s]ewage treatment plants, sewage disposal plants, intercepting and collecting sewers, outfall sewers, trunk, connecting, and other sewer mains"); <u>id.</u> § 54312 ("'Improve' means reconstruct, replace, extend, repair, better, equip, develop, embellish, or otherwise improve."); <u>id.</u> § 54307 (defining "local agency" to include any city); <u>id.</u> § 54301 ("This chapter is full authority for the issuance of bonds and the

acquisition, construction, or improvement of any enterprise pursuant to this chapter.").

In <u>Varjabedian</u>, the City of Madera relied primarily on the same statutory grant of authority from the RBA to negate a nuisance claim based on its operation of a sewage treatment plant.  20 Cal. 3d at 291.  The California Supreme Court, however, held that section 3482 did not preclude a nuisance claim against Madera for noxious fumes emanating from its sewage plant.  <u>Id.</u> at 292.  The court reasoned that "the general authorization" to construct and operate a sewage plant neither expressly nor by "plainest and most necessary implication" sanctioned "the production of any particular level of odors."  <u>Id.</u>  In addition to the lack of statutory authorization to create odors, the court concluded that the Legislature had not contemplated, "to any extent, the creation of a malodorous nuisance when it authorized sewage plant construction," especially because "one object of such plants is to <u>remove</u> harmful and obnoxious effluents from the environment."  <u>Id.</u>

In 1993, a state appellate court departed from <u>Varjabedian</u> in <u>Friends of H Street</u>, holding that section 3482 precluded plaintiffs' nuisance claims based on the heavy traffic at high speeds resulting from the City of Sacramento's operation of the street.  <u>Friends of H Street v. City of Sacramento</u>, 20 Cal. App. 4th 152, 162, 164 (1993).  While Sacramento's powers also derived from the RBA, the court gave greater weight to sections of the Vehicle and Streets and Highway Codes that expressly vest cities with discretion in operating and maintaining their roads.  <u>See</u> <u>id.</u> at 162 ("Based on the

[discussed code sections], we conclude the City's authority to act--or not act--in the manner complained of is established 'by the plainest and most necessary implication from the powers expressly conferred' by the legislative scheme.") (citation omitted). Assuming the statutes cited in <u>Friends of H Street</u> support the court's conclusion,[5] the plethora of statutes from which the court implied an express conferral of complete discretion is simply lacking in the context of sewage systems.[6]

<u>Friends of H Street</u> also relied heavily on the context of the dispute: "Although the relevant statutes do not expressly authorize the City to operate its streets in a manner which generates traffic, noise, fumes, litter, and headlight glare, . . . such loss of peace and quiet is a fact of urban life which must be endured by all who live in the vicinity of freeways, highways, and city streets." <u>Friends of H Street</u>, 20 Cal. App. 4th at 163; <u>see also</u> <u>Harding v. State ex rel. Dep't. of Transp.</u>, 159 Cal. App. 3d 359, 362-63 (1984) ("[A]lthough the 'roar of automobiles . . . smoke and fumes . . . contribute to a loss of peace and quiet,' the conditions occurring on state constructed highways do not constitute a nuisance in the legal sense due to the

---

[5] A city's discretion when maintaining roads, for example, is not absolute. <u>See, e.g.</u>, Cal. Sts. & High. Code § 1806(a) ("No city shall be held liable for failure to maintain any road until it has been accepted into the city street system in accordance with subdivision[ in this section]."); <u>accord</u> <u>Copeland v. City of Oakland</u>, 19 Cal. App. 4th 717, 721 (1966).

[6] The City relies on dicta from a 1941 decision stating that section 3482 precludes the "inadequacy of the drains" from constituting a nuisance. <u>Womar v. City of Long Beach</u>, 45 Cal. App. 2d 643, 663 (1941). Even that case, however, suggests that a city's negligent "construction or maintenance" of its drains could create an actionable nuisance. <u>Id.</u> at 654.

14

exculpatory effect of Civil Code section 3482.") (citation omitted).

Similar to noxious fumes from a sewage treatment center, however, contamination from a sewage main is not a generally accepted consequence of the existence of a sewage main, especially because a central purpose of a sewage main is to relocate deposited liquids to prevent saturation, and potentially contamination, of the surrounding soil and groundwater.[7] Varjabedian, 20 Cal. 3d at 292; see also id. at 292 n.6 ("[G]eneralizations drawn from statutes authorizing highway construction may not be applicable to municipal waste water treatment operations."). Therefore, unlike Friends of H Street, neither the statutory authority for nor expected consequences from sewer mains necessarily imply that the Legislature intended to authorize the City's operation, maintenance, repair, or management of a sewer main to create a nuisance.

In the context of airport noise nuisance claims against public entities, the California Supreme Court also explained that "governmental approval and encouragement of aviation activity" does not "necessarily impl[y] legislative approval of aviation noise which results in interference with neighboring land uses" when "[b]oth federal and state authorities have attempted vigorously to abate aircraft and airport noise." Greater

---

[7] Although the facts are unclear, the City may have owed a duty to plaintiff to repair at least part of the sewer. See Reinsch v. City of Los Angeles, 243 Cal. App. 2d 737, 747 (1996) ("The prescriptive right to use the drainpipe across the plaintiffs' property acquired by the city gave rise to the concomitant duty on the part of the city to maintain and repair that drainpipe as long as its use continues.") (citations omitted).

15

Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal. 3d 86, 101-02 (1979). The extensive federal and state legislation regulating and providing for remediation of pollution and contamination reflects a similar effort to "vigorously [] abate" pollution and contamination of subsurface soil and groundwater. Against this backdrop of legislation, it cannot be said that, by merely granting cities the power to operate, maintain, repair, or manage sewer mains, the legislature "inten[ded] to sanction a[ny] nuisance" resulting from cities' sewer mains. Id. at 101 (citation omitted).

Lastly, the City requests this court to conclude that it "could create a nuisance by deciding to repair the sewer and physically doing so in a faulty manner, but not by exercising discretionary authority to repair upon receipt of a complaint rather than proactively." (City's Reply in Supp. of Mot. to Dismiss 6:9-11.) As the only support for this proposition, the City analogizes to the immunity granted by California Government Code section 820.2 of the CTCA to public officials for their discretionary decisions. See Cal. Gov't Code § 820.2 ("Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.").

Even assuming an analogous immunity exists[8] and that the City is vested with the discretionary authority it claims,

---

[8] While neither party adequately addresses the issue, the court questions whether the immunity afforded in section 820.2 is not also inapplicable to nuisance claims because it is part of the same statutory scheme as section 815. See infra Part II.C.

16

the court cannot determine at this stage whether the City actually exercised discretion. Specifically, "to avail itself of the discretionary immunity provided by section 820.2, a public entity must prove that the employee, in deciding to perform (or not to perform) the act which led to plaintiff's injury, <u>consciously exercised discretion</u> in the sense of assuming certain risks in order to gain other policy objectives." <u>Lopez v. S. Cal. Rapid Transit Dist.</u>, 40 Cal. 3d 780, 794 (1985); <u>see also</u> <u>id.</u> ("Such a showing was not and could not have been made by [the public entity] at the demurrer stage.") (citations omitted).

In light of the California Supreme Court's narrow application of section 3482, the court cannot find that the City's general authority to operate, maintain, repair, or manage a sewage main expressly or "by the plainest and most necessary implication" sanctioned the City to do so in a manner that created, or resulted in, a nuisance. Accordingly, the court must deny the City's motion to dismiss plaintiff's nuisance claims as barred by section 3482.

C.  <u>California Government Code Section 815</u>

Section 815(a) of the CTCA "provides that '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.'" <u>Eastburn v. Reg'l Fire Protec. Auth.</u>, 31 Cal. 4th 1175, 1179 (2003) (quoting Cal. Gov't Code § 815(a)). The CTCA, which was intended to "confine potential governmental liability," precludes an action against a public entity unless a statute imposes "<u>direct</u> liability" on that entity. <u>Id.</u>

Plaintiff concedes that section 815(a) bars its trespass claim against the City because the claim relies

17

exclusively on common law and therefore lacks statutory authority. (Pl.'s Opp'n to City's Mot. to Dismiss 16 n.14.) Accordingly, the court will grant the City's motion to dismiss plaintiff's trespass claim.

With respect to plaintiff's nuisance claims, however, "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." Nestle v. City of Santa Monica, 6 Cal. 3d 920, 937 (1972). Despite the California Supreme Court's unequivocal conclusion that section 815 does not bar nuisance actions against a public entity, the City asks this court to depart from Nestle in light of more recent precedent. Specifically, in 2003, the California Supreme Court held that the general statutory tort for negligence (California Civil Code section 1714) was insufficient in itself to negate a city's immunity under section 815 because the statute did not "declar[e the city] to be liable, or at least creat[e] some duty of care" the city owes. Eastburn, 31 Cal. 4th at 1183.

Admittedly, the California Supreme Court's ruling in Eastburn that a general tort provision is insufficient to circumvent immunity potentially conflicts with its reasoning in Nestle. Compare id. ("[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714."), with Nestle, 6 Cal. 3d at 933 ("The fact that [the nuisance statutes] are general in language, and do not specifically refer to public

18

entities, does not preclude their application to such entities, because generally worded code sections are applied to governmental bodies if no impairment of sovereign powers would result.") (alteration in original).  This potential conflict, however, neither displaces courts' long-standing and continuing adherence to Nestle nor the legislative history on which the California Supreme Court relied when deciding the case.

Not only have California courts continued to follow Nestle after Eastburn, the California Supreme Court and a state appellate court relied on it for the very proposition at issue in this case.  See Wells v. One2One Learning Found., 39 Cal. 4th 1164, 1216 n.38 (2006) ("[W]hile the TCA was meant to supplant contrary common law, it was not intended to prevail over other statutes that impose liability in specific circumstances.") (citing Nestle, 6 Cal. 3d at 932) (additional citation omitted); Kempton v. City of Los Angeles, 165 Cal. App. 4th 1344, ____, 81 Cal. Rptr. 3d 852, 855 (2008) ("Government liability under Government Code section 815 et seq. may be based upon public nuisances per se . . . .") (citing Nestle, 6 Cal. 3d at 933).

In Nestle, the California Supreme Court also relied heavily on legislative history indicating that the Legislature specifically intended to preserve a public entity's continued liability for nuisance when it enacted section 815 and proposed amendments to it.  Nestle, 6 Cal. 3d at 931-36.  Eastburn, on the other hand, did not discuss, or even suggest, that the Legislature specifically contemplated whether a public entity would remain liable for negligence after it enacted section 815.

For these reasons, the court declines the City's

invitation to depart from clear and binding precedent. Accordingly, because section 815 does not immunize the City from plaintiff's nuisance claims, the court will deny the City's motion to dismiss those claims pursuant to that section.

IT IS THEREFORE ORDERED that the City's motion to dismiss plaintiff's nuisance claims against the City be, and the same hereby is, DENIED with respect to any injuries incurred between August 27, 2004 and August 25, 2005 and GRANTED with respect to any injuries incurred before that one-year period; and the City's motion to dismiss plaintiff's trespass claim against the City be, and the same hereby is, GRANTED.

DATED: October 1, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE