UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ADOBE LUMBER, INC., a
California corporation,

      Plaintiff,

    v.

F. WARREN HELLMAN and WELLS
FARGO BANK, N.A., as Trustees
of Trust A created by the
Estate of Marco Hellman; F.
WARREN HELLMAN as Trustee of
Trust B created by the Estate
of Marco Hellman; THE ESTATE
OF MARCO HELLMAN, deceased;
WOODLAND SHOPPING CENTER, a
limited partnership; JOSEPH
MONTALVO, an individual;
HAROLD TAECKER, an individual;
GERALDINE TAECKER, an
individual; HOYT CORPORATION,
a Massachusetts corporation;
PPG INDUSTRIES, INC., a
Pennsylvania corporation;
OCCIDENTAL CHEMICAL
CORPORATION, a New York
corporation; CITY OF WOODLAND;
and ECHCO SALES & EQUIPMENT
CO.,

      Defendants.

_____/

NO. CIV. 05-1510 WBS PAN

MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFF'S NINTH,
TENTH, AND ELEVENTH CLAIMS FOR
RELIEF

1

----oo0oo----

Plaintiff Adobe Lumber, Inc. filed this action in response to its discovery of contamination in the subsurface soil and groundwater of a retail property it owns in Woodland, California.  Defendant Hoyt Corporation ("Hoyt") and defendants Occidental Chemical Corporation ("Occidental") and PPG Industries, Inc. ("PPG") separately move to dismiss plaintiff's ninth, tenth, and eleventh claims for strict product liability, negligence, and negligence per se, respectively for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

I.   Factual and Procedural Background

To avoid repetition of its January 4, 2006 Order, the court will limit its discussion to the factual and procedural events that are relevant to defendants' pending motions.  See Adobe Lumber, Inc. v. Hellman, 415 F. Supp. 2d 1070, 1072-74 (E.D. Cal. 2006), vacated on other grounds, Kotrous v. Goss-Jewett Co. of N. Cal., 523 F.3d 924, 934 (9th Cir. 2008). The following facts are alleged in the TAC.

Plaintiff is the owner of a shopping center located at 120 Main Street in Woodland, California ("Site").  (Third Am. Compl. ("TAC") ¶¶ 3, 23.)  When plaintiff purchased the Site in 1998, defendants Harold and Geraldine Taecker operated a dry cleaning business in Suite K, a location they had leased for that purpose since 1974.  (Id. at ¶¶ 4, 20.)  Plaintiff continued to lease this space to the Taeckers through October 2001.  (Id. at ¶ 23.)

In conducting their dry cleaning business, the Taeckers

2

1  used equipment that Hoyt manufactured and the dry cleaning

2  solvent perchloroethylene (PCE) that PPG and Occidental

3  manufactured.  (<u>Id.</u> at ¶¶ 10-12, 26.)  Between 1974 and 1991, the

4  Taeckers allegedly disposed of wastewater contaminated with PCE

5  through "the sanitary sewer system and otherwise so it might

6  enter the environment."  (<u>Id.</u> at ¶ 28.)  Several sudden and

7  accidental discharges of PCE at the Site also occurred between

8  approximately 1974 and 1994.  (<u>Id.</u> at ¶ 29.)  The TAC alleges

9  that defendants Hoyt, Occidental, and PPG designed, manufactured,

10  marketed, and/or supplied dry cleaning equipment and PCE that,

11  when used as directed, resulted in the disposal of PCE into the

12  sewer system and environment.  (<u>Id.</u> at ¶ 25.)  The Hoyt-

13  manufactured dry cleaning equipment was removed from the

14  Taeckers' operation "in or around 1998."  (<u>Id.</u> at ¶ 40.)

15         "In or around August 2001," plaintiff learned of the

16  presence of PCE and other contaminates in the soil and

17  groundwater beneath the Site through the results of a "limited

18  subsurface investigation" it voluntarily conducted.  (<u>Id.</u> at ¶

19  34.)  Thereafter, plaintiff informed the Yolo County

20  Environmental Health Department and the California Regional Water

21  Quality Control Board, Central Valley Region ("Regional Board")

22  of the results of its investigation and demanded, in September

23  2001, that the Taeckers "assume responsibility for and incur the

24  cost to further investigate, test, assess, study, monitor, and

25  remediate the contamination at the Site."  (<u>Id.</u> at ¶¶ 35-36.)

26  The Taeckers rejected plaintiff's demand and allegedly refused to

27  respond to the contamination.  (<u>Id.</u> at ¶ 36.)

28         In October 2001, the Regional Board directed the

3

Taeckers to submit a work plan for the investigation of the
contamination at the Site.  (Id. at ¶ 37.)  When the Taeckers
refused to comply, plaintiff filed a separate action against them
in January 2002 in this court, captioned Adobe Lumber, Inc. v.
Taecker, et al., Case No. CV S-02-0186-GEB-GGH ("Adobe I"), for
"recovery of costs to investigate and remediate the contamination
at the [S]ite, a declaration of liability for future
investigation and cleanup costs, and damages under various state-
law tort theories."  (Id.)  In that litigation, plaintiff also
"sought to discover the facts as to the Taeckers' dry cleaning
operations as another basis for identifying potential source(s)
of contamination and related liability therefor."  (Id. at ¶¶ 37,
40.)

          In April 2002, the Regional Board first requested that
plaintiff submit a work plan--the same plan previously requested
of the Taeckers--to investigate the nature, extent, and possible
sources of contamination at the Site.  (Id. at ¶¶ 38-39.)
Plaintiff complied with the Regional Board's request and, after
receiving comments on its work plan, implemented the revised work
plan and reported the results to the Regional Board in November
2002.  (Id.)

          Separately, as part of pre-trial discovery in Adobe I,
the Taeckers served their initial disclosures on plaintiff in
July 2002.  (Id. at ¶ 40.)  In June 2003, in response to
plaintiff's first discovery requests, the Taeckers disclosed "for
the first time . . . that they had discharged PCE-contaminated
wastewater from their dry cleaning equipment through a floor
drain" between 1974 and 1991.  (Id.)  During his deposition in

4

1  April 2004, Harold Taecker also testified for the first time that

2  Hoyt manufactured the dry cleaning equipment that produced the

3  PCE-contaminated wastewater and that a company named Echco

4  delivered PCE to the dry cleaning facility during most of its

5  operation.  (Id.)  After the April 2004 deposition, and in

6  preparation of expert testimony in Adobe I, plaintiff "happened

7  to come upon documents" produced in an unrelated lawsuit that

8  revealed that "Echco distributed PCE manufactured by PPG and

9  Occidental, and PPG, Occidental and Hoyt instructed end-users of

10 their products to dispose of PCE into the sewer system, onto the

11 ground or otherwise into the environment."  (Id.)

12         Plaintiff filed its initial Complaint and First Amended

13 Complaint (FAC) in this action on July 27, 2005 and August 29,

14 2005, respectively, naming Hoyt, PPG, and Occidental as

15 defendants.  After plaintiff filed its Complaint in the present

16 action, the court dismissed Adobe I without prejudice.  On

17 October 24, 2005, defendants Hoyt, PPG, and Occidental moved to

18 dismiss plaintiff's product liability claims as alleged in the

19 FAC as time barred.  This court granted those motions, finding

20 that plaintiff had failed to plead sufficiently its diligence in

21 investigating its claims under the requirements of California's

22 discovery rule.  See Adobe Lumber, Inc. v. Hellman, 415 F. Supp.

23 2d 1070, 1081 (E.D. Cal. 2006).

24         In response, plaintiff filed its Second Amended

25 Complaint (SAC) on February 3, 2006.  Thirteen days after

26 plaintiff filed its SAC, however, the court stayed this action

27 after granting interlocutory appeal of its January 4, 2006 Order

28 on different grounds.  After the Ninth Circuit rendered a

1  decision on the appeal, <u>Kotrous v. Goss-Jewett Co. Of N. Cal.,</u>
2  <u>Inc.</u>, 523 F.3d 924 (9th Cir. 2008), the case was reopened on May
3  15, 2008 and plaintiff filed its Third Amended Complaint (TAC) on
4  June 27, 2008.

5       Defendants Hoyt PPG and Occidental now move to dismiss
6  the product liability and negligence claims in plaintiff's TAC
7  pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
8  to state a claim upon which relief can be granted.

9  II.  <u>Discussion</u>

10      On a motion to dismiss, the court must accept the
11  allegations in the complaint as true and draw all reasonable
12  inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416
13  U.S. 232, 236 (1974), <u>overruled on other grounds by Davis v.</u>
14  <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322
15  (1972).  To survive a motion to dismiss, a plaintiff needs to
16  plead "only enough facts to state a claim to relief that is
17  plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct.
18  1955, 1974 (2007).  Dismissal is appropriate, however, where the
19  plaintiff fails to state a claim supportable by a cognizable
20  legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,
21  699 (9th Cir. 1990); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47
22  (1957), <u>abrogated on other grounds by</u> <u>Twombly</u>, 127 S. Ct. at 1968
23  (complaint must "give the defendant fair notice of what the
24  plaintiff's claim is and the grounds upon which it rests").
25  When examining a plaintiff's complaint, "the court is not
26  required to accept legal conclusions cast in the form of factual
27  allegations if those conclusions cannot reasonably be drawn from
28  the facts alleged." <u>Clegg v. Cult Awareness Network</u>, 18 F.3d

752, 754-55 (9th Cir. 1994).

Defendants argue that plaintiff's strict liability, negligence and negligence per se claims are time barred. Generally, a cause of action accrues, and thus the statute of limitations begins to run, "'when the claim is complete with all of its elements.'" Platt Elec. Supply, Inc. v. Eoff Elec., Inc., 522 F.3d 1049, 1054 (9th Cir. 2008) (citations omitted); Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005) (citations omitted). The discovery rule, however, postpones accrual of the claim "'until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements.'" Platt, 522 F.3d at 1054 (citations omitted); Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999). The question is not whether a plaintiff suspects "facts supporting each specific legal element of a particular cause of action[,]" but rather "whether the [plaintiff has] reason to at least suspect that a type of wrongdoing has injured [it]." Fox, 35 Cal. 4th at 807.

The discovery rule allows claims based on distinct types of wrongdoing to accrue at different times, even though the claims arise out the same injury to a plaintiff. Fox, 35 Cal. 4th at 813 (holding that a plaintiff's product liability claim regarding a faulty medical device used in a procedure accrued after the accrual of plaintiff's medical malpractice claim related to the same procedure). To delay accrual for a distinct claim, a plaintiff must plead and prove that a "reasonable investigation" at the time plaintiff had reason to suspect an injury and some wrongful cause "would not have revealed a factual

basis for <u>that particular cause of action</u>." <u>Fox</u>, 35 Cal. 4th at 803 (emphasis added).  The discovery rule thus delays the start of the statutory period "until such time as a reasonable investigation would have revealed [the] factual basis [for that claim.]" <u>Id.</u>

In the present action, the parties agree that California Code of Civil Procedure section 338(b), which provides a three-year statute of limitations, governs plaintiff's ninth, tenth, and eleventh claims. <u>Adobe Lumber, Inc. v. Hellman</u>, 415 F. Supp. 2d 1070, 1079 (E.D. Cal. 2006), <u>vacated on other grounds</u>, <u>Kotrous v. Goss-Jewett Co. of N. Cal.</u>, 523 F.3d 924, 934 (9th Cir. 2008). Plaintiff first filed its Complaint asserting product liability claims against defendants Hoyt, PPG, and Occidental on July 27, 2005.  Because of the three-year statute of limitations, as long as plaintiff's claims accrued no earlier than July 28, 2002, they will survive defendants' motions to dismiss.

As alleged in the TAC, plaintiff was aware of its injury (the PCE contamination) in August 2001 when it received the results of the subsurface study.  The presence of a dry cleaning solvent in the subsurface soil and groundwater of the Site also provided plaintiff with reason to suspect a wrongful cause at that point.  Plaintiff's claims based upon strict liability, negligence and negligence per se are thus potentially barred under the three-year statute of limitations unless plaintiff satisfies the pleading requirements of the discovery rule and shows that a reasonable investigation between August 2001 and July 28, 2002 would not have revealed a factual basis

8

for its product liability claims.

First, a plaintiff whose claim on the face of the complaint would otherwise be barred by the statute of limitations "must plead facts" showing "the time and manner of discovery." Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1120 (9th Cir. 1994); Servantez v. County of Sacramento, No. 07-0661, 2008 WL 686616, at *2 (E.D. Cal. Mar. 12, 2008) (quoting Fox, 35 Cal. 4th at 808). This requirement ensures that at the point of the alleged discovery, "plaintiffs actually learned something they did not know before." E-Fab, Inc. v. Account, Inc. Servs., 153 Cal. App. 4th 1308, 1325 (2007) (quoting Bennett v. Hibernia Bank, 47 Cal. 2d 540, 563 (1956)).

Here, the TAC sufficiently pleads that plaintiff did not discover its product liability claims until after April 2004. Plaintiff asserts broadly that, "despite diligent investigation," it "did not discover . . . a factual basis for all of the elements of its claims against [Hoyt, PPG, and Occidental] until on or after" July 28, 2002.[1] (TAC ¶ 39.) In support of this allegation, the TAC describes the series of disclosures during the course of discovery in Adobe I that ultimately led to the discovery of documents indicating that the defendants' products had defective warnings and instructions. Harold Taecker first

_____

[1]   Although the TAC contains language, highlighted by defendants (PPG and Occidental's Mem. in Supp. of Mot. to Dismiss 5:5-8), suggesting that plaintiff's product liability claims, at least in part, rest on a theory of inherently defective product design, plaintiff stated at oral argument and in its opposition brief that those claims are based only on liability for inadequate warnings and instructions, not defective design. (Pl.'s Opp'n to Solvent Mfr. Defs.' Mot. to Dismiss 11:17-20.) See also Adobe Lumber, Inc., 415 F. Supp. 2d at 1081 n.10 (recognizing same).

revealed, in June 2003, that the Taeckers had discharged PCE-
contaminated wastewater into the floor drain. (TAC ¶ 40.)  Then,
during Harold Taecker's April 2004 deposition, he disclosed that
Hoyt had manufactured the dry cleaning equipment used by the
Taeckers until 1998 and that Echco delivered PCE to the Taeckers
during most of its operation. (Id.)  The TAC then alleges that,
while preparing expert testimony following that deposition,
plaintiff discovered documents from an unrelated case linking
Echco to PCE manufactured by PPG and Occidental and indicating
that defendants had instructed users of their products to dispose
of PCE into the sewer system and surrounding environment. (Id.)

These facts are sufficient at least to satisfy
plaintiff's burden of alleging the time and manner of discovery
of its claims.  Although the TAC phrases most of its factual
allegations in terms of when the Taeckers first disclosed
information to plaintiff, a reasonable inference can be made that
such revelations constitute the first awareness by plaintiff of
such facts, especially in light of plaintiff's alleged lack of
knowledge about dry cleaning processes and environmental
contamination. (TAC ¶ 23.)  Moreover, the Taeckers' disclosures
that revealed the factual basis of the claims, including
information concerning the practice of discharging wastewater
into the floor drain and the identities of the equipment
manufacturer and PCE delivery company, concern information that a
landlord in the plaintiff's position would not ordinarily possess
absent some disclosure by another.

Mere ignorance of the identity of the wrongdoer, the
manufacturers here, is insufficient to delay accrual of a claim.

Here, however, it was the revelation of the defendants'
identities that led to the discovery of a factual basis of
defendants' alleged wrongdoing, i.e., not only that PCE
contaminated water was disposed of through the floor drain, but
that defendants actually instructed users to dispose of PCE into
the sewer system, onto the ground or into the environment. See
Fox, 35 Cal. 4th at 813 ("Although the identity of the
manufacturer-wrongdoer is not an essential element of a products
liability cause of action . . . a plaintiff's ignorance of
wrongdoing involving a product's defect will usually delay
accrual because such wrongdoing is essential to that cause of
action.") (citations omitted).

    Therefore, the TAC pleads sufficient facts to show
that, when the Taeckers' disclosures led plaintiff to information
suggesting that defendants had allegedly given faulty warnings
and instructions with their products, plaintiff "actually learned
something [it] did not know before." E-Fab, Inc., 153 Cal. App.
4th at 1325.

    Second, a plaintiff seeking to invoke the discovery
rule "must plead facts to show . . . the inability to have made
earlier discovery despite reasonable diligence." Hopkins, 33
F.3d at 1120; Servantez, 2008 WL 686616, at *2 (quoting Fox, 35
Cal. 4th at 808).  The obligation to act with "reasonable
diligence" relates to plaintiff's duty to investigate all
potential causes of an injury. Fox, 35 Cal. 4th at 808-09.

    The court finds that plaintiff has satisfied this
standard by pleading facts in support of its allegations of
reasonable diligence.  Plaintiff alleges that, following the

11

August 2001 study, it "promptly reported the discovery of the contamination" to state regulatory authorities.  (TAC ¶ 35.) Plaintiff then pursued the Taeckers, the apparent wrongdoers and those most likely to hold information about the possible causes of the contamination.  When the Taeckers proved uncooperative and non-responsive, plaintiff pleads that it filed an action against them in January 2002, at least in part as a means of acquiring information about the possible sources of the PCE contamination. (TAC ¶¶ 37, 40.)  As pled, the mere delay of five months between the awareness of the injury and the filing of an action to explore possible causes of that injury is not enough to eviscerate plaintiff's allegations of diligence.

In addition, none of the allegations in the TAC concerning Adobe I suggest that plaintiff's investigation should have given it "reason at least to suspect a factual basis for [the] elements" of its strict liability and negligence claims before July 28, 2002.  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999).  The alleged series of disclosures that led to discovery of plaintiff's claims did not begin until June 2003. There is no indication in the TAC that these disclosures could have been induced before July 28, 2002.  Defendants argue that plaintiff's failure to depose Harold Taecker until April 2004 demonstrates a lack of diligence (Hoyt's Reply in Supp. of Mot. to Dismiss 4:19-20; PPG and Occidental's Reply in Supp. of Mot. to Dismiss 5:12-15), however, the only relevant inquiry is whether diligent investigation would have disclosed a factual basis for the product liability claims before July 28, 2002, three years prior to the filing of this action.  The failure to

12

1 depose Harold Taecker before July 28, 2002 alone does not

2 constitute a lack of diligence.  Plaintiff has pled more than

3 mere conclusions in support of its diligence and has therefore

4 sufficiently pled the inability to have made earlier discovery of

5 its ninth, tenth, and eleventh claims for strict liability,

6 negligence and negligence per se despite reasonable diligence.

7          Accordingly, the court finds plaintiff's TAC alleges

8 enough facts to satisfy the pleading requirements of the

9 discovery rule and, therefore, to survive a motion to dismiss.

10          IT IS THEREFORE ORDERED that defendants Hoyt, PPG, and

11 Occidental's motions to dismiss plaintiff's strict product

12 liability, negligence, and negligence per se claims be, and the

13 same hereby are, DENIED.

14 DATED:  October 16, 2008

15

16

WILLIAM B. SHUBB
17 UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28