UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ADOBE LUMBER, INC., a California corporation, | NO. CIV. 05-1510 WBS EFB |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION FOR SETTLEMENT APPROVAL |
| v. | |
| F. WARREN HELLMAN and WELLS FARGO BANK, N.A., as Trustees of Trust A created by the Estate of Marco Hellman; F. WARREN HELLMAN as Trustee of Trust B created by the Estate of Marco Hellman; THE ESTATE OF MARCO HELLMAN, DECEASED; WOODLAND SHOPPING CENTER, a limited partnership; JOSEPH MONTALVO, an individual; HAROLD TAECKER, an individual; GERALDINE TAECKER, an individual; HOYT CORPORATION, a Massachusetts corporation; PPG INDUSTRIES, INC., a Pennsylvania corporation; OCCIDENTAL CHEMICAL CORPORATION, a New York corporation; CITY OF WOODLAND; and ECHCO SALES & EQUIPMENT CO., | |
| Defendants, | |
| AND RELATED COUNTERCLAIMS, CROSSCLAIMS, AND THIRD PARTY COMPLAINTS. | |

1

1        Plaintiff Adobe Lumber Inc. filed this cost recovery
2   action under the Comprehensive Environmental Response,
3   Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675;
4   the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§
5   6901-6992k; and California state law in response to its discovery
6   of contamination in the subsurface soil and groundwater of a
7   retail property it owns in Woodland, California.  Plaintiff now
8   requests that the court approve a settlement it has reached with
9   two of the defendants, Harold and Geraldine Taecker ("Taeckers"),
10  who operated a dry-cleaning facility on the property.

I.    Factual and Procedural Background

12         Plaintiff is the owner of a shopping center located in
13  downtown Woodland, California ("Site").  (Pl.'s Mem. Supp.
14  Settlement Approval 3:5-6.)  When plaintiff purchased the Site in
15  1998, the Taeckers operated a dry cleaning business in Suite K, a
16  location they had leased for that purpose since 1974.  (Id. at
17  3:6-8.)  From 1974 until plaintiff purchased the Site, various
18  defendants and third-party defendants in this action held
19  ownership interests in the Site.  (Id. at 3:14-4:4.)

20         Between 1974 and 1991, the Taeckers allegedly disposed
21  of wastewater contaminated with the dry cleaning solvent
22  perchloroethylene (PCE) through the sanitary sewer system and
23  otherwise into the environment at the Site.  (Id. at 4:20-21.)
24  Plaintiff states that defendants Hoyt Corporation ("Hoyt"),
25  Occidental Chemical Corporation ("Occidental"), PPG Industries
26  ("PPG"), and Echco Sales Co. Inc. manufactured and/or delivered
27  dry cleaning equipment and PCE that, when used as directed,
28  resulted in the disposal of PCE into the sewer system and

2

1  environment.  (Id. at 24:5-11.)  In addition to the Taeckers'
2  disposal of PCE, sudden and accidental discharges also allegedly
3  occurred between approximately 1974 and 1994.  (Id. at 5:8-6:2.)
4          In 2001, plaintiff learned of the presence of PCE and
5  other contaminants in the soil and groundwater beneath the Site.
6  (Id. at 6:4-9.)  Estimates of the cost to clean up the Site,
7  though disputed by the parties, range from $2 million to $4.3
8  million.  (Id. at 7:10-12; Pl.'s Reply 27:19-20.)  Plaintiff
9  informed state authorities of the results of its investigation
10 and eventually brought suit in 2002 against the Taeckers,
11 captioned Adobe Lumber, Inc. v. Taecker, et al., Case No. CV S-
12 02-0186-GEB-GGH ("Adobe I"), to recover response costs and
13 declare liability for future cleanup expenses.  (See Pl.'s Mem.
14 Supp. Settlement Approval 6:9-25.)  Other parties were added to
15 that action as third-party defendants.  (Id. at 7:1-3.)  During
16 that litigation, the parties engaged in extensive settlement
17 discussions and ultimately executed a settlement agreement in
18 July 2005 that was later amended in October 2005.  (Id. at 8:5-
19 7.)  The agreement called for a stipulated dismissal of Adobe I
20 without prejudice and a release of the Taeckers from liability to
21 all parties.  (Id. at 8:11-20.)  The parties agreed to move for
22 settlement approval in the subsequent litigation.  (Id.)
23         After Adobe I was dismissed without prejudice,
24 plaintiff filed the instant action, adding new defendants and
25 asserting claims under CERCLA and RCRA and eight state law
26 claims.  Proceedings in the instant action were stayed in 2006
27 after the court certified an interlocutory appeal on the issue of
28 whether plaintiff, as a potentially responsible party (PRP) under

3

CERCLA who had voluntarily incurred response costs, could pursue a cost recovery action for contribution against other PRPs under 42 U.S.C. § 9613 (CERCLA section 113). Because of the stay, the court denied without prejudice plaintiff's then-pending motion to approve the settlement with the Taeckers. (Feb. 15, 2006 Order 2:22-24.) On appeal, the Ninth Circuit held that plaintiff must pursue an action for cost recovery under 42 U.S.C. § 9607 (CERCLA section 107) in light of the Supreme Court's ruling in <u>United States v. Atlantic Research</u>, 127 S. Ct. 2331 (2007). <u>Kotrous v. Goss-Jewett Co. of N. Cal.</u>, 523 F.3d 924 (9th Cir. 2008). This case was then reopened on May 15, 2008, and plaintiff renewed its motion to approve the settlement on October 28, 2008.

Under the terms of plaintiff's settlement agreement with the Taeckers, the Taeckers' insurer, Truck Insurance Exchange ("Farmers"), agreed to pay $500,000 to plaintiff in exchange for a release of liability for the Taeckers. (Pl.'s Mem. Supp. Settlement Approval 8:11-20.) Plaintiff asserts that the settlement amount, well below the estimates of total cleanup costs, is fair in light of evidence that the Taeckers have no significant personal assets and their policies with Farmers may not cover all of the relevant incidents of PCE disposal and discharge. (<u>Id.</u> at 14:22-17:9.)

Under the terms of the settlement agreement, plaintiff's receipt of the $500,000 is conditioned on this court issuing an order that 1) finds the parties have entered into a good faith settlement, 2) discharges the Taeckers from all liability to plaintiff and to any third party for contribution, and 3) reduces plaintiff's claims against all nonsettling

4

defendants by the amount of the settlement. (Id. at 8:12-20.)

II. Discussion

To facilitate settlement in multi-party litigation, a court may review settlements and issue bar orders that discharge all claims of contribution by nonsettling defendants against settling defendants. See In re Heritage Bond Litig., 546 F.3d 667, 677 (9th Cir. 2008); Franklin v. Kaypro Corp., 884 F.2d 1222, 1225 (9th Cir. 1989). In addition to a bar order, plaintiff has specifically requested that the court adopt a "pro tanto" settlement credit method-- i.e., a dollar-for-dollar reduction of the amount of the settlement from plaintiff's ultimate recovery. (Pl.'s Mem. Supp. Settlement Approval 1:5, 31:13-14.) Because this issue affects the court's review of the settlement more generally, see McDermott v. AmClyde, 511 U.S. 202, 216-17 (1994) (noting the different approval procedures typically involved with the different settlement credit methods), and may itself be dispositive, the court must first address the issue of settlement credit.

In general, when a plaintiff settles with one of multiple joint tortfeasors, the remaining defendants are entitled to a credit for that partial settlement against their total liability. McDermott, 511 U.S. at 208. In CERCLA cost recovery actions, a court must consider such partial settlements in allocating response costs among PRPs. See K.C. 1986 Ltd. P'ship v. Reade Mfg., 472 F.3d 1009, 1018 (8th Cir. 2007) ("CERCLA plainly requires that the district court take these settlements into its equitable consideration in the allocation process."). When applying a settlement credit against a plaintiff's eventual

5

recovery, courts have adopted two main alternative methods: proportionate share and pro tanto (dollar-for-dollar). See McDermott, 511 U.S. at 209, 211.

The proportionate share approach, embodied in the Uniform Comparative Fault Act (UCFA), calls for the reduction of the nonsettling defendants' liability by the equitable share of the settling party's obligation. See Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 20 (1st Cir. 2004); UCFA § 6, 12 U.L.A. 126 (1996).[1] In contrast, under the pro tanto approach contained in the Uniform Contribution Among Tortfeasors Act (UCATA), the liability of the nonsettling defendants is reduced by the dollar amount of the settlement. See Capuano, 381 F.3d at 20; UCATA § 4, 12 U.L.A. 194 (1996). These two approaches, therefore, assign the risk of an inadequate partial settlement--i.e., a settlement below the amount allocated to the settling defendant at trial--to different parties. Under the proportionate share approach, the plaintiff bears the risk, while under the pro tanto approach, the nonsettling defendants bear the risk. See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 161 (4th Cir. 1991).

In the twenty-eight years that CERCLA has been

---

[1] The UCFA provides for equitable allocation of liability based on relative fault. See UCFA § 2, 12 U.L.A. 126 (1996). In the context of CERCLA, a PRP's equitable share consists of the portion of response costs a court allocates to that PRP "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). In this analysis, fault is only one possible consideration. See Waste Mgmt. of Alameda County, Inc. v. E. Bay Reg'l Park Dist., 135 F. Supp. 2d 1071, 1090 (N.D. Cal. 2001) (listing a variety of potential considerations, including relative fault, the care exercised by parties, the degree of cooperation with government agencies, the benefits received by the parties from the contamination, and the financial resources of the parties, among others).

6

existence, the Ninth Circuit has never addressed the question of the proper credit method for settlements between private PRPs under CERCLA.  But cf. In re Exxon Valdez, 229 F.3d 790, 796 (9th Cir. 2000) (stating generally in a non-CERCLA case that "[t]he proportionate share approach is the law in the Ninth Circuit"). Nor has a consensus developed among the courts of appeals that have considered the issue.  Compare Azko Nobel Coatings, Inc. v. Aigner Corp., 197 F.3d 302, 308 (7th Cir. 1999) (adopting the pro tanto approach), with Capuano, 381 F.3d at 20 (interpreting CERCLA to "give the district court discretion regarding the most equitable method of accounting for settling parties").

Nevertheless, district judges in the Ninth Circuit, particularly in this District, appear to uniformly employ the proportionate share approach for settlements between private PRPs.  See, e.g., Ameripride Serv. Inc. v. Valley Indus. Serv., Inc., No. 00-113, 2007 WL 1946635, at *4 (E.D. Cal. July 2, 2007) (Karlton, J.); Patterson Envtl. Response Trust v. Autocare 2000, Inc., No. 01-6606, 2002 U.S. Dist. LEXIS 28323, at *21 (E.D. Cal. July 8, 2002) (Wanger, J.); West County Landfill, Inc. v. Raychem Int'l Corp., No. 93-3170, 1997 U.S. Dist. LEXIS 1791, at *2-3 (N.D. Cal. Feb. 14, 1997); Acme Fill Corp. v. Althin CD Med., Inc., No. 91-4268, 1995 WL 822663, at *1 (N.D. Cal. Nov. 8, 1995); United States v. W. Processing Co., 756 F. Supp. 1424, 1432 (W.D. Wash. 1990).  District courts nationally have also widely adopted the proportionate share credit method.  See Tosco Corp. v. Koch Indus., Inc., 216 F.3d 886, 897 (10th Cir. 2000) (stating that a majority of courts deciding CERCLA section 113(f)(1) contribution claims have adopted the UCFA (citing

7

Lynnette Boomgaarden & Charles Breer, Surveying the Superfund Settlement Dilemma, 27 Land & Water L. Rev. 83, 109-12, 111 n.189 (1992))).

The text of CERCLA does not identify the appropriate settlement credit method for settlements between private PRPs. CERCLA section 113(f), which governs contribution claims, explicitly addresses only settlements reached with the United States or a state and provides that such settlements "reduce the potential liability of the [nonsettling defendants] by the amount of the settlement." 42 U.S.C. § 9613(f)(2); see 42 U.S.C. § 9622(g)(5) (providing the same approach for de minimis settlements with the government). The statute does not mention settlements between private PRPs.

CERCLA section 113(f)(1), though, generally instructs courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).[2] This provision promotes fairness and prevents relatively innocent PRPs from being forced to bear a disproportionate burden of the liability. See Carson Harbor

---

[2] The court recognizes that plaintiff has asserted a claim for cost recovery under CERCLA section 107, not CERCLA section 113, and liability under that provision may be joint and several. See Atl. Research, 127 S. Ct. at 2339 n.7 (assuming without deciding that CERCLA section 107(a) provides for joint and several liability). Defendants and third-party defendants, however, have filed numerous crossclaims, counterclaims, and third-party claims for contribution. Therefore, to resolve the instant litigation, the court must ultimately allocate response costs among all PRPs. Id. at 2339 ("Resolution of a [CERCLA section] 113(f)] counter-claim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the [CERCLA section] 107(a) action." (citing 42 U.S.C. § 9613(f))). CERCLA section 113(f) and the case law interpreting it thus remain relevant to this case.

1  Village, Ltd. v. Unocal Corp., 270 F.3d 863, 871 (9th Cir. 2001)
2  (en banc) ("The contribution provision aims to avoid a variety of
3  scenarios by which a comparatively innocent PRP might be on the
4  hook for the entirety of a large cleanup bill."); SmithKline
5  Beecham Corp. v. Rohm & Haas Co., 89 F.3d 154, 163, 163 n.7 (3d
6  Cir. 1996) (noting that CERCLA policy disfavors the apportionment
7  of liability "in disregard of the equities affecting the parties"
8  (citing Smith Land & Imp. Co. v. Celotex Corp., 851 F.2d 86, 90
9  (3d Cir. 1988))); In re Hemingway Transp., Inc., 993 F.2d 915,
10 922 (1st Cir. 1993) (explaining that "CERCLA section [113(f)] is
11 aimed at promoting equitable allocations of financial
12 responsibility").

13         Of the two alternative approaches, the pro tanto method
14 clearly produces a greater risk of inequitable allocation of
15 liability. McDermott, 511 U.S. at 214; cf. Capuano, 381 F.3d at
16 20 ("The [proportionate share] approach has the benefit [] of
17 ensuring, in theory, that damages are apportioned equitably among
18 the liable parties."). Under the pro tanto approach, nonsettling
19 defendants must pay more than their fair share whenever a
20 plaintiff settles with a defendant for less than that defendant's
21 equitable share. See Kaypro, 884 F.2d at 1230.[3] Plaintiffs
22 commonly accept such settlements because of the benefits of
23 reduced uncertainty and lower litigation costs. McDermott, 511

---

[3] Despite this, California has codified the pro tanto approach. See Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990) (noting that California Civil Procedure Code section 877 adopts the UCATA "almost word for word"). This statutory provision, however, does not apply when defendants are only responsible for their equitable share of liability. See Ehret v. Congoleum Corp., 73 Cal. App. 4th 1308, 1319 (1999); Hoch v. Allied-Signal, Inc., 24 Cal. App. 4th 48, 63 (1994).

9

U.S. at 212-13; <u>Kaypro</u>, 884 F.2d at 1230.  Furthermore, when the parties know that the court will employ a pro tanto credit, plaintiffs may be tempted to settle first with defendants of lesser resources for low settlement amounts.  These settlements then enable plaintiffs to fund continued litigation against the remaining, wealthier defendants without reducing their ultimate recovery.[4]  See <u>Kaypro</u>, 884 F.2d at 1230.

   The proportionate share approach can also, of course, produce an inequitable result when a settling defendant pays less than its equitable share.  In that scenario, the plaintiff can no longer recover its full damages since its total recovery is reduced by the equitable share of the settling defendant.  However, the plaintiff, as the party that decides whether to settle with any of the defendants, is in the best position to mitigate that risk by settling only when the proposed amount approximates the settling defendant's equitable share of liability.  See <u>Comerica Bank-Detroit v. Allen Indus., Inc.</u>, 769 F. Supp. 1408, 1414 (E.D. Mich. 1991).  Under the pro tanto approach, in contrast, the parties injured by a low settlement-- the nonsettling defendants--have no ability to prevent or affect the settlement amount.  Thus, the proportionate share approach makes it more likely that pre-trial settlements and the overall litigation will achieve an equitable allocation of liability

---

[4] Without suggesting any impropriety, the court notes that some of these risks are present in this case.  Plaintiff seeks to settle with the Taeckers, defendants who plaintiff argues have few resources and doubtful insurance coverage.  (Pl.'s Mem. Supp. Settlement Approval 14:22-17:9.)  The nonsettling defendants, in contrast, include parties likely to have greater resources, including "three large, national corporations."  (<u>Id.</u> at 24:21.)

10

among all responsible parties.

The Supreme Court adopted the proportionate share approach for maritime actions specifically because of this tendency to achieve a fairer allocation of costs.  The Court concluded that the two settlement credit methods were "closely matched" with regard to the promotion of settlement and judicial economy, but adopted the proportionate share approach because it was more consistent with the Court's holding in <u>United States v. Reliable Transfer Co., Inc.</u>, 421 U.S. 397 (1975), which required that damages in maritime cases be equitably allocated in accordance with the parties' comparative fault.  <u>McDermott</u>, 511 U.S. at 217; <u>see</u> <u>Kaypro</u>, 884 F.2d at 1231 (adopting the proportionate share method for securities class actions in part because it "comports with the equitable purpose of contribution" (citing <u>Smith v. Mulvaney</u>, 827 F.2d 558, 561 (9th Cir. 1987))).[5]

In this case, the court will similarly employ the

---

[5] On this point, the court's analysis of <u>McDermott</u> differs from that of the Seventh Circuit.  The Seventh Circuit reasoned that the <u>McDermott</u> Court had declared the choice between the two approaches a "toss up" and that the Court instead based its adoption of the proportionate share rule in maritime actions on "the way related issues in admiralty have been handled."  <u>Azko Nobel Coatings, Inc. v. Aigner Corp.</u>, 197 F.3d 302, 308 (7th Cir. 1999).  It concluded that the pro tanto method should thus govern settlements between PRPs, as that approach is specified in CERCLA section 113(f)(2), "the most closely related rule of law."  <u>Id.</u>
    The <u>McDermott</u> Court, however, did not consider the choice of settlement credit methods a "toss up" in all respects; it specifically concluded that the pro tanto approach was less consistent with the equitable apportionment of liability.  <u>See</u> <u>McDermott</u>, 511 U.S. at 214 ("[T]he pro tanto approach is likely to lead to inequitable apportionments of liability . . . .").  The Court's adoption of the proportionate share approach was expressly based on its greater tendency to promote equitable allocation in compliance with the instruction of <u>Reliable Transfer</u> to allocate liability fairly.  <u>See id.</u> at 217 ("[T]he proportionate share approach is superior, especially in its consistency with <u>Reliable Transfer</u>.").

11

1  proportionate share approach to determine the effect of
2  settlements, as that method better facilitates the equitable
3  allocation of liability in accordance with the statutory guidance
4  of CERCLA section 113(f)(1).  See also New York v. Solvent Chem.
5  Co., Inc., 984 F. Supp. 160, 168 (W.D.N.Y 1997) (concluding that
6  the UCFA "is consistent with the purposes behind [CERCLA]
7  sections 113(f)(1) and 113(f)(2)"); Hillsborough County v. A&E
8  Road Oiling Serv., Inc., 853 F. Supp. 1402, 1410 (M.D. Fla. 1994)
9  (explaining that the purposes of CERCLA include prompt clean up
10 and the fair allocation of costs and declaring that the "UCFA
11 effectively embraces both"); United States v. SCA Serv. of Ind.,
12 Inc., 827 F. Supp. 526, 535 (N.D. Ind. 1993) ("The UCFA will
13 better promote CERCLA's policy of encouraging settlements, while
14 securing equitable apportionment of liability for
15 [n]on-settlors.").

16         The proposed settlement agreement here is expressly
17 conditioned upon the court entering an order that only reduces
18 the liability of nonsettling defendants by the dollar amount of
19 the settlement--i.e., a pro tanto credit.  Accordingly, because
20 the court concludes that the proportionate share approach governs
21 the effect of settlements in this case, the court must deny
22 plaintiff's motion to approve the settlement on those terms.

23         IT IS THEREFORE ORDERED that plaintiff's motion for
24 settlement approval conditioned on the reduction of the liability
25 ///
26 ///
27 ///
28 ///

of nonsettling parties by the dollar amount of the settlement be, and the same hereby is, DENIED.

DATED:  February 2, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE