UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ADOBE LUMBER. INC., a California corporation, | NO. CIV. 2:05-1510 WBS EFB |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| F. WARREN HELLMAN and WELLS FARGO BANK, N.A., as Trustees of Trust A created by the Estate of Marco Hellman; F. WARREN HELLMAN, as Trustee of Trust created by the Estate of Marco Hellman; THE ESTATE OF MARCO HELLMAN, DECEASED; WOODLAND SHOPPING CENTER, a limited partnership; JOSEPH MONTALVO, an individual; HAROLD TAECKER, an individual; GERALDINE TAECKER, an individual; HOYT CORPORATION, a Massachusetts corporation; PPG INDUSTRIES, INC., a Pennsylvania corporation; OCCIDENTAL CHEMICAL CORPORATION, a New York corporation; and CITY OF WOODLAND, | |
| Defendants. | |

1

1        Plaintiff Adobe Lumber, Inc. brought this action
2   against several defendants for cost recovery, declaratory relief,
3   contribution, indemnity, nuisance, and trespass pursuant to the
4   Comprehensive Environmental Response, Compensation, and Liability
5   Act ("CERCLA"), 42 U.S.C. §§ 9601-9675; the Hazardous Substance
6   Account Act ("HSAA"), Cal. Health & Safety Code §§ 25300-25395;
7   and California common law.  Defendant City of Woodland ("City")
8   now moves for partial summary judgment on plaintiff's CERCLA and
9   HSAA claims pursuant to Rule 56 of the Federal Rules of Civil
10  Procedure.

I. Factual and Procedural Background

12       In 1998, plaintiff purchased four parcels of land in
13  Woodland, California, and on one of the parcels sits a commercial
14  building and parking lot known as the Woodland Shopping Center.
15  (See Riemann Decl. (Docket No. 356) ¶¶ 2-3.)  Between 1974 and
16  2001, Suite K of the Woodland Shopping Center housed a dry
17  cleaning business called "Sunshine Cleaners," which was operated
18  by defendants Harold and Geraldine Taecker.  (Pearlman Decl.
19  (Docket No. 422) Ex. L at 2:8-12.)

20       Suite K of the Woodland Shopping Center is bordered on
21  the west by a public alley called Academy Lane, beneath which a
22  sewer main owned by the City runs north to south.  (Id. Ex. G
23  ("City's Resp. Req. Admis.") at No. 3.)  A floor drain in Suite K
24  connects to the City's sewer main through a lateral pipe.
25  (Pearlman Decl. Ex. T (Docket No. 423) at 113:2-116:9.)  The
26  lateral pipe is comprised of a four-inch cast iron pipe that runs
27  beneath the concrete area of the Woodland Shopping Center that
28  connects to a four-inch vitrified clay pipe ("VCP") under Academy

2

1  Lane, which in turn connects to the sewer main under Academy Lane
2  (an eight-inch VCP pipe).  (Id. Ex. R ("Krasnoff Rebuttal
3  Report") at 9-10; id. Ex. Z ("Larson Expert Report")at 8.)  From
4  1974 until approximately 1991, the Taeckers used the floor drain
5  to dispose of wastewater containing the dry cleaning solvent
6  perchloroethylene ("PCE"), a volatile organic chemical that is
7  considered a "hazardous substance" under CERCLA.  (Pearlman Decl.
8  (Docket No. 422) Ex. M ("Taeckers' Supp. Resp. Req. Admis.") No.
9  6); see 40 C.F.R. § 302.4.
10             As alleged in the Third Amended Complaint ("TAC"),
11 plaintiff retained an environmental consultant in August 2001 to
12 conduct a limited subsurface investigation in the area around
13 Suite K and determine whether the Taeckers' activities had
14 affected the soil or groundwater.  (TAC ¶ 34.)  This
15 investigation revealed the presence of volatile organic
16 compounds, including PCE.  (Id.)  According to plaintiff, this
17 subsurface contamination resulted from the leakage of PCE from
18 the "sewer main on Academy Lane."  (Id. ¶ 33.)  Plaintiff
19 contends that the sewer was "especially likely to leak due to . .
20 . its age, the large number of joints, grout (mortared) joints,
21 and defects in the sewer system" and that the City's "management
22 and maintenance of the sewer system was re-active, minimal[,] and
23 inadequate."  (Pl.'s Stmt. Disputed Facts Nos. 38-39.)
24             After several communications with the Taeckers and the
25 California Regional Water Quality Control Board ("RWQCB"),
26 plaintiff brought a lawsuit against the Taeckers in January 2002,
27 and several other parties were later joined as third-party
28 defendants.  (See TAC ¶ 37.)  That action ("Adobe I") was

3

subsequently dismissed without prejudice when plaintiff initiated the instant lawsuit on July 27, 2005.  See Adobe Lumber, Inc. v. Hellman, 415 F. Supp. 2d 1070, 1073 (E.D. Cal. 2006).

The defendants in this action include the City, the Taeckers, former owners of the Woodland Shopping Center, and the manufacturers and distributors of the dry cleaning solvent and equipment used at Suite K.  (See TAC ¶¶ 3-18.)  With respect to the City, plaintiff alleges claims of declaratory relief and cost recovery under CERCLA; declaratory relief, contribution, and indemnity under the HSAA; and nuisance and trespass under California common law.  (Id. ¶¶ 53-106.)  On October 2, 2008, the court granted the City's motion to dismiss plaintiff's trespass claim.  (See Docket No. 186.)  On September 8, 2009, the court denied the City's motion for partial summary judgment on plaintiff's CERCLA and HSSA claims, determining that the sewer main on Academy Lane was a "facility" within the meaning of CERCLA.  (See Docket No. 360.)

Witness discovery in this case closed on September 1, 2009 pursuant to the court's January 22, 2009 Scheduling Order.  (Docket No. 330.)  On October 13, 2009, parties exchanged expert reports, at which point the City allegedly realized for the first time that plaintiff intended to hold it liable for leaks from the lateral pipe, rather than solely the sewer main.  (Whitesides Decl. (Docket No. 410) ¶ 3.)  The City now moves for partial summary judgment on its liability for the sewer lateral in plaintiff's CERCLA and HSAA claims pursuant to Federal Rule of Civil Procedure 56.

II. Discussion

4

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party, but may not engage in credibility determinations or weigh the evidence. Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The City contends that it is entitled to summary adjudication on its liability for the lateral pipe because plaintiff did not plead this theory of liability in its TAC in violation of Federal Rule of Civil Procedure 8(a)(2) and failed to otherwise provide adequate notice of the City's potential liability for leakage from the lateral pipe.  Rule 8(a)(2) requires that the allegations in a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quotation omitted).

Ninth Circuit precedent is clear that, "where . . . the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."  Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008); see also Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (holding that the complaint did not satisfy the notice pleading requirements of Rule 8(a) because the complaint "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment"); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").[1]

---

[1] Plaintiff's contention that Rule 8 challenges cannot be brought on summary judgment or should be taken only as a Rule 12(c) motion for judgment on the pleadings is refuted by cases

6

The City argues that the TAC alleges the sewer main on Academy Lane as the sole basis of the City's liability in this action and therefore that plaintiff's present attempt to assert that the City is liable for discharge of PCE from the lateral pipe should be disallowed. Admittedly, the TAC makes no distinction between the sewer main on Academy Lane and the lateral pipe that originates from Suite K. (See TAC ¶¶ 30-33.) Rather, the TAC references the "sewer main on Academy lane" (TAC ¶¶ 14, 30, 32-33), "the City's management and maintenance of its sewer system" (id. ¶ 30), "portions of [the City's] sewer lines associated with dry cleaning operations" (id. ¶ 31), and "the sewer line on Academy Lane" (id. ¶¶ 31-33) as the basis for the City's liability.

Viewing these references in context, plaintiff's generic allegations did not adequately put the City on notice that it could be held liable for discharges from the lateral pipe. For instance, in summarizing the City's liability in the TAC, plaintiff pleads that "the City owns property adjacent to the Site, commonly known as Academy Lane, on which a public sewer main is located, and that releases from the sewer main on the City's property have migrated onto and contaminated the Site." (Id. ¶ 14.) It is uncontested that the only pipe referred to as the "sewer main" has been the city main that runs north to south on Academy Lane. Moreover, plaintiff's allegations in paragraph thirty of the TAC expressly relates to the maintenance and repair

---

where the Ninth Circuit has repeatedly upheld courts' decisions to disallow new claims raised on summary judgment. See, e.g., Navajo Nation, 535 F.3d at 1080; Pickern, 457 F.3d at 968-69.

7

of "the public sewer main on Academy Lane." (<u>Id.</u> ¶ 30.)  Within the context of this paragraph, plaintiff's allegation that "the City's management and maintenance of its sewer system of the years has been reactive, minimal, and inadequate" would only put the City on notice that plaintiff was referencing the City's general practice of failing to maintain Woodland's sewers, rather than referring to more faulty parts of the sewer line that the City might be liable for. (<u>Id.</u>)

The TAC's reference to "portions of [the City's] sewer lines related to dry cleaning operations" in paragraph thirty-one similarly does not appear to refer to the City's alleged liability for anything other than the north-south sewer main. (<u>Id.</u> ¶ 31.)  This paragraph of the TAC begins by the City "knew or should have known that the Taeckers were using PCE in their dry cleaning operations" and should have known that "leaking sewer lines . . . were and are a major source of PCE contamination of ground water." (<u>Id.</u>)  Plaintiff subsequently alleges that "even though the City knew or should have known that portions of its sewer lines associated with dry cleaning operations were a potential, if not likely, source of PCE contamination of groundwater, the City failed to inspect the <u>sewer line on Academy Lane</u> or take any other precautions or actions to prevent or mitigate the release of PCE <u>from that sewer line</u> to soil and groundwater." (<u>Id.</u> (emphasis added).)  The reference to sewer lines associated with dry cleaning operations appears to simply be an attempt to demonstrate that the City should have known that dry cleaning operations were using its sewer main and that it failed to prevent the release of PCE from

8

the sewer line on Academy Lane. Nothing in the TAC would lead the City to believe that it was being sued for anything other than the sewer main.

Plaintiff's response to the City's first motion for summary judgment reinforced this interpretation. (Docket No. 346.) The City's first summary judgment motion expressly distinguished between the lateral pipe and the sewer main to argue that the sewer main was not a "facility" within the meaning of CERCLA:

> Here, the distinction between public sewers and private pipes connected thereto is pivotal, as it is undisputed that wastewater contained PCE was deposited via the boiler room floor drain into the lateral pipe connecting Suite K to the CITY sewer under Academy Lane. Although the lateral pipe owned by ADOBE and its predecessors falls within the meaning of "facility," because it leads into the sewer main, the municipal main itself does not and thus CITY lacks liability under CERCLA even if some PCE entered the soil or groundwater via the sewer main rather than entirely from the drain, the lateral pipe or surface spills.

(City's Mem. I/S/O First Mot. Summ. J. (Docket No. 346) at 9:4-10.) In its Opposition to that motion, plaintiff never asserted that the lateral pipe was also a basis of liability to the City and only argued that the sewer main qualified as a facility. (See Docket No. 354.) In fact, plaintiff went so far as to acknowledge ownership of the lateral pipe, arguing that "the sewer pipe on Academy Lane constitutes a CERCLA facility along with <u>the Woodland Shopping Center property and the sewer lateral located theron</u> [sic]." (Pl's Opp'n City's First Mot. Summ. J. at 19:24-26 (emphasis added).) Plaintiff also acknowledged a distinction between the main and the lateral in its Statement of Undisputed Fact, stating that "[t]he floor drain in Suite K

9

connects by way of a sewer lateral, to the sewer on Academy Lane." (Pl.'s Statement Undisputed Facts (Docket No. 355) ¶ 27.) These statements all support the notion that nothing in the TAC was meant to reference the sewer lateral, but rather only the sewer main.

The TAC's vague allegations, which fail to distinguish between the sewer main and lateral pipe despite plaintiff's knowledge about the distinction between the sewer main and lateral since the dismissal of Adobe I in 2005 are insufficient to give notice to the City as to its liability. (See Whitesides Decl. (Docket No. 410) Ex. B (Krasnoff Depo.).)  While plaintiff need not plead all detailed facts in the TAC, it must plead some. See Pickern,457 F.3d at 968-69.  A plaintiff may not make vague and generic allegations in her complaint and simply add facts as discovery goes along without amending the complaint because to do so "would read the 'fair notice' requirement out of Rule 8(a) and would seriously undermine the rule's goal of encouraging expeditious resolution of disputes." Pickern v. Pier 1 Imports (U.S.), Inc., 339 F. Supp. 2d 1081, 1088 (E.D. Cal. 2004).

The City did not have notice of any allegations about the lateral pipe until October of 2009, nearly four years into the litigation, after witness discovery had closed, and after it had already presented one motion for summary judgment.  While plaintiff contends that the City could have discovered its liability for the lateral pipe if it asked about it during witness discovery, plaintiff's responses to the City's first motion for summary judgment and the vagueness of the TAC indicate that the City should have had no reason to believe discovery on

10

the lateral pipe was necessary.  As a result the City was prejudiced because it was unable to depose percipient witnesses relating to the lateral pipe or adjudicate this issue on its first motion for summary judgment.  In such a situation, the court must grant the City's motion for summary judgment on plaintiff's claim for liability against the City for discharge from the lateral pipe, since the TAC gave the City inadequate notice of the claim.  See Navajo Nation, 535 F.3d at 1080; Pickern, 457 F.3d at 968-69; Wasco Prods., 435 F.3d at 992.  The proper avenue for plaintiff to legitimately allege the City's liability for the lateral pipe would have been through a motion to amend the TAC, rather than simply asserting a theory of liability of which the City had no notice.  See Pickern, 457 F.3d at 969.

     IT IS THEREFORE ORDERED that the City's motion for partial summary judgment with respect to its liability for any release of PCE from the lateral pipe that connected the floor drain at Suite K of the Woodland Shopping Center to the sewer main on Academy Lane be, and the same hereby is, GRANTED.[2]

DATED:  March 4, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2] This Order is without prejudice to the right of the plaintiff to file a new action against the City to recover on any claims not contained in the TAC in this action, including a claim for liability based on leakage from the lateral pipe.